BRAINERD et al. v. STATE.

(Court of Claims of New York.   October 10, 1911.)

1. EMINENT DOMAIN (§§ 131, 138*)—COMPENSATION—CONSTITUTIONAL PROVISIONS—"JUST COMPENSATION."

"Just compensation," provided by the Constitution (article 1, § 6), as damages for the taking of private property for public use, is to be measured by the market value of the property where the whole property is taken, and by the difference in the market value of the premises before and after the appropriation, where a part only of the property is taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 353, 370; Dec. Dig. §§ 131, 138.*

For other definitions, see Words and Phrases, vol. 4, pp. 3897–3902.]

2. EMINENT DOMAIN (§ 134*)—COMPENSATION—VALUE AT BEST USE.

Claimants, whose property has been taken by the state for a public use, are entitled to have their property estimated at the best use to which it might be put, and, where it was being used to the best advantage by a going concern, they are entitled to have its market value fixed by reference to such use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. § 134.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EMINENT DOMAIN (§ 145*)—COMPENSATION—TAKING PART OF TRACT—MAR-
KET VALUE BEFORE APPROPRIATION—PROSPECTIVE IMPROVEMENT.

The market value of premises used in connection with a canal dock for
the carrying on of a coal, fertilizer, and cooperage business before its
partial appropriation by the state for the purpose of an improved barge
canal must be fixed without regard to the proposed improvement of the
canal, and its enhancement in value thereby.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 378–
389; Dec. Dig. § 145.*]

4. EMINENT DOMAIN (§ 147*)—COMPENSATION—LIMITED ESTATES—DOCK AND
WATER RIGHTS.

Where premises upon the Erie Canal, which have the use of a dock
in connection with a coal, fertilizer, and cooperage business, are taken by
the state for the purpose of a canal improvement, the use of such dock
on the old canal, though revocable by the state at any time, is to be val-
ued as an element in the market value of the premises taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 394–
396; Dec. Dig. § 147.*]

5. EMINENT DOMAIN (§ 138*)—TAKING PART OF PREMISES—MARKET VALUE OF
REMAINDER—BENEFITS.

Where a right of way and a dock upon a canal are taken from prem-
ises used in connection with the dock for a coal, fertilizer, and coop-
erage business for the purpose of a barge canal improvement, the market
value of the remaining premises must be fixed by reference to the com-
pleted improvement, taking into account that there will be a sloping wall
opposite the remaining premises over which the construction of a dock
will be expensive, and the disadvantages and benefits to the remaining
premises, and generally all considerations which an ordinarily prudent
man would take into consideration in fixing the difference between its
value before and after the appropriation, exclusive of the cost of a new
dock.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 370;
Dec. Dig. § 138.*]

6. EMINENT DOMAIN (§ 145*)—COMPENSATION—CONSTITUTIONAL PROVISIONS—
SET-OFF OF BENEFITS—"JUST COMPENSATION."

Under the constitutional requirement (article 1, § 6) of "just compensa-
tion" for private property taken for public use, an owner against whom
benefits are to be charged must be given at least the market value of the
lands taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 378–
389: Dec. Dig. § 145.*]

7. EMINENT DOMAIN (§ 134*)—COMPENSATION—EVIDENCE AS TO VALUE—PROF-
ITS.

As a general rule, profits of a business cannot be taken as the basis for
estimating value in proceedings to assess compensation for property tak-
en; whether profits shall be considered being dependent on the nature
of the premises taken, and where elements of personal skill, experience,
and efforts of the owner are mainly responsible for the profits from a
business conducted upon real property, such profits give little aid in de-
termining the value of the property, but, where the earnings depend
chiefly upon the location, soil, or character of the property itself, the
profits furnish reliable evidence of its value.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 134.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. EMINENT DOMAIN (§ 202*)—EVIDENCE—VALUE OF PROPERTY—PROFITS AND FACTS RELATING TO BUSINESS.

Claimants owned premises fronting 340 feet on the old Erie Canal, to which they had a right of way and on which they conducted a coal, fertilizer, and cooperage business in connection with a dock 100 feet on the front, and coal sheds and a trestle, and also maintained storage houses. The whole of the right of way, the whole of the old canal frontage, the coal trestle, sheds, and part of the storage houses were taken by the state for the purpose of the barge canal improvement. *Held* that, while claimants were not entitled to have the amount of business done by them on the premises taken as the measure of the value of the property taken, they were entitled to put in evidence all the facts relating to their business, including the profits therefrom, and in the discretion of the court to show the special adaptation of the property to the business in which it had been used, and that in arriving at the market value no evidence should be excluded which an ordinarily prudent man would take into account before forming a judgment as to the market value of property which he was about to purchase.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 202.*]

9. STATES (§ 184*)—COURT OF CLAIMS—LAND APPROPRIATED—COMPENSATION—ITEMS—EXPENSE OF PROCURING ABSTRACT.

Though, under Code Civ. Proc. § 274, which provides that costs, witnesses' fees, and disbursements shall not be taxed in the Court of Claims, nor shall counsel or attorney's fees be allowed, no costs or disbursements can be recovered by a claimant for the value of land appropriated by the state for a canal improvement, yet his expenses in procuring an abstract of his title, being preliminary to the filing of the claim, must be awarded to him.

[Ed. Note.—For other cases, see States, Dec. Dig. § 184.*]

10. STATES (§ 184*)—COURT OF CLAIMS—LAND APPROPRIATED BY STATE—STATUTES APPLICABLE.

The Condemnation Law, so far as it allows taxation of costs and disbursements in proceedings to condemn real property in general (Code Civ. Proc. § 3372), is not applicable to the Court of Claims in passing on a claim for the value of land appropriated by the state.

[Ed. Note.—For other cases, see States, Dec. Dig. § 184.*]

11. CONSTITUTIONAL LAW (§ 45*)—DETERMINATION OF CONSTITUTIONAL QUESTIONS—VALIDITY OF STATUTE—JUDICIAL AUTHORITY AND DUTY—COURT OF CLAIMS.

The Court of Claims will not hold Code Civ. Proc. § 274, forbidding it to tax costs, witnesses' fees, and disbursements, to be unconstitutional, so far as it applies to a claimant for the value of land taken by the state, on the ground that it violates the requirement of Const. art. 1, § 6, for just compensation to persons whose property is taken for public use, but will assume the validity of the code section, and follow its directions as part of the practice of the court until its provisions are directly passed on by the appellate courts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42; Dec. Dig. § 45.*]

Claim of Henry C. Brainerd and Chauncey Brainerd against the State of New York for property taken for the improvement of a canal. Award for claimants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The claimants were the owners of a parcel of land in the village of Spencerport, Monroe county, N. Y., situated on the south side of the Erie Canal, having a frontage on the berm bank of 341.26 feet. There were located upon the premises a cabbage storehouse of frost-proof construction having a capacity of 300 tons, a fertilizer house having a capacity of 150 tons, coal sheds and track capacity of 1,000 tons, a cooper shop, and a barrel storage house. The canal runs east and west at this point, and the cooper shop and storehouse were at the south end of the property away from the canal, while the coal shed, storehouse, and cabbage house were adjacent to the canal, and parts of each of these buildings were taken by the appropriation. The property was equipped upon the canal side with a dock about 100 feet in length which had been in existence for upwards of 40 years. There was no evidence of any permit having been granted for the construction of the dock. Its removal was required by the construction of the new canal which was widened at this point. The property was reached by means of a right of way 11 feet in width extending along the blue line of the canal a distance of 301.3 feet from Union street, the main street in the village of Spencerport. Opposite the entrance to the right of way was the office of the claimants, which had been built and equipped with wagon scales for use in carrying on the business in which they were engaged. Between Union street and the claimants' premises there was intervening property owned by other parties across which this right of way extended. The claimants conducted upon the premises a retail coal business, a fertilizer business, and a cooperage business, and rented the cabbage house for storage purposes. These enterprises were conducted together, and were a profitable going business.

On the 10th day of August, 1909, the state appropriated for the purposes of the construction of the Barge Canal .131 acres of these premises, which took away the whole of claimants' frontage upon the canal, about three-fourths of the cabbage house, nearly all of the fertilizer house, all of the coal trestle, and a portion of the coal shed, and the whole of claimants' right of way from their business plant to their office, leaving the remainder of the property isolated and cut off from access to any public highway. The claimants' dock upon the canal was destroyed, and the plan of construction of the canal involved building in front of the remaining property a sloping wall. in the proportion of one foot in depth to two feet of horizontal, extending gradually to the navigable portion of the canal, making the construction of a new dock to serve the purposes of the remaining property a matter of great expense, considering the extent and value of the property. There was some evidence that a timber dock might be constructed which would very considerably reduce the expense of making the new canal available for business purposes in connection with the remainder of the property. There was some evidence to the effect that no site as available as that of the claimants' for the business in which they were engaged could be secured in the village of Spencerport, and from the time of the appropriation the claimants had no legal access to the premises, and were debarred from continuing their business, and have been obliged to discontinue the same. From the time of the appropriation, therefore, the claimants were deprived of legal access to the remainder of their premises, the use of the cabbage house, coalhouse, and coal shed was entirely destroyed, and they were deprived of the use of the canal for the purposes of conducting their business.

For the damages sustained by the claimants there was a wide divergence in the estimates of the witnesses, largely arising from the fact that the claimants' witnesses appraised the value of the property upon the basis of the business conducted upon it, while the state's witnesses did not consider this element, but estimated the damages to the property solely upon the difference in its market value. The claimants' witnesses placed the value of the buildings at $4,943, while the estimate of the state's witnesses was $2,964.38. The estimate of the three buildings that were in whole or in part taken by the state varied according to the testimony of these two witnesses from $3,164 to $1,521.40. The estimates of the compensation to which claim-

ants were entitled varied from $18,700 to $2,000. An award of $5,014 was made, but a majority of the court refused to allow any costs and disbursements except the expense of procuring the abstract of title.

Clinton H. Furbish and John Van Voorhis' Sons, for claimants.

Thomas Carmody, Atty. Gen., Frank W. Brown, Deputy Atty. Gen., and M. H. Quirk, Asst. Deputy Atty. Gen., for the State.

RODENBECK, J.   The questions in dispute in this claim arise over the rule that is to be applied in measuring the compensation to which the claimants are entitled.   The Constitution provides that they must be awarded "just compensation," but difficulties present themselves in connection with the method by which this compensation is to be determined.   It is sometimes said that just compensation means that parties must be made good for the loss which an appropriation causes them.   This, however, is too broad a statement of the measure of damages to which in this state claimants are entitled.   Where the provisions of Constitutions are sufficiently liberal, as for instance where claimants are allowed all "damages" or "injuries" that they may sustain, it may be true to say that they must be made good for all the loss that they have suffered.

[1] The language of the Constitution (article 1, § 6) of this state, however, confined the damages to "just compensation" which the courts have repeatedly said is to be measured by the market value of the property where the whole property is taken and by the difference in the market value of the premises before and after the appropriation where a part only of the property is taken, except where benefits are involved, when owners must be awarded at least the market value of the land taken.   Matter of City of New York, 190 N. Y. 350, 360, 83 N. E. 299, 16 L. R. A. (N. S.) 335.   This rule is easy of expression, but difficult of application, for it involves the inquiry as to what items are to be taken into account in estimating the market value, and what items are to be considered in determining the damages to the remainder of the premises.   It is exactly these considerations that give rise to the questions in this case.

In Matter of Simmons, 130 App. Div. 350, 114 N. Y. Supp. 571, Judge Sewell said that, in estimating the value of the land taken, the property must not be appraised at its value to the owner or to the corporation seeking to acquire it, but must be estimated at "the fair value as between one who wants to purchase and one who wants to sell," and that the owner is not limited in compensation to the value of the property at the time of the appropriation for the use to which it was being put, but is entitled to receive "its market value for any purpose to which * * * it is adapted."   The fact that the land in this instance is to be used in connection with a public improvement made by the state must not be allowed to operate to enhance or diminish its value.   The owner is not entitled to be paid increased damages "merely because the land is peculiarly adapted to the use to which it is intended to be applied."

131 N.Y.S.—15

[2] The claimants in this case therefore are entitled to have their property estimated at the best use to which it might be put, and, as there is no contention but that it was being used to the best advantage, they are entitled to have its market value fixed by reference to the use for the enterprises in which they were engaged as a going concern. Matter of Simmons, 130 App. Div. 350, 352, 114 N. Y. Supp. 571, 573. In estimating the value of the remainder of the property, its value must be fixed by reference to the condition in which it will be left after the appropriation with the prospect of securing a new right of way and constructing a new dock, and the use of the proposed canal with any advantages or disadvantages that might result to the premises from the improvement. As was said by Judge Woodward in Matter of Board of Rapid Transit R. R. Com'rs, 128 App. Div. 103, 121, 112 N. Y. Supp. 619, 633, the appraisal should take into account the effect of the appropriation upon the remainder of the premises "its advantages and disadvantages, benefits and injuries and the witnesses were bound to consider, in behalf of the claimants, everything that, if known to a proposed purchaser at the time that the title vested * .* .* would tend to increase or to diminish the market value of the premises which remained after the taking of the property of the claimant."

[3] Under these rules, the claimants are entitled to have their premises valued before the appropriation by reference to the condition in which they were at that time with the use of the dock and the old canal, and its market value must be fixed without regard to the prospect of the construction of the new canal, for such a rule might give to claimants in some cases more than their property is worth and in others less than its value. The market value must be fixed without regard to the prospective improvement. The question usually put to witnesses is, "What was the market value of the property before the appropriation?" This question means what was it worth before the appropriation and without considering the proposed improvement. Because the state contemplates constructing an improvement, it should not be made to pay for the enhancement in the value of property that follows the announcement or construction of the improvement where it benefits property specially, nor should claimants be made to suffer the damages resulting therefrom where it produces a special depreciation in the value of the property.

[4] So in this case the claimants are entitled to have the market value of their premises estimated without regard to the proposed improvement, and in fixing the market value there should be considered the fact that there was a dock maintained with the approval of the state and used in connection with the conduct of the enterprises in which the claimants were engaged. The maintenance of the dock depended upon the will of the state, and its removal might have been directed for any necessary improvement of the canal. The state does not guarantee that the canal will be used for any period of time, or that it will not be abandoned. Whitney v. State, 96 N. Y. 240, 245. The privilege which the claimants enjoyed was one revocable at the reasonable will of the state. Putnam v. State, 132 N. Y. 344, 347,

30 N. E. 743. No right could be acquired by the claimants to maintain the dock under the doctrine of prescription, for "the Erie Canal is a great public highway, and no individual, according to well-established principles, can gain for himself an easement on a highway by prescription, or in any way make a valid encroachment upon the public right." Burbank v. Fay, 65 N. Y. 57, 69. The use of the old canal and the dock, however, constituted an asset which formed an element in the market value of the premises. The removal of this dock is not directed by virtue of the repair or improvement of the old canal. It has been appropriated by the state for the construction of the new canal, and in this proceeding the state is exercising its power of eminent domain and not its authority to remove the dock for necessary purposes of operating or improving the old canal. The extent, therefore, to which the dock enhances the value of claimants' premises must be considered in fixing its market value.

[5, 6] As the market value of the property before the appropriation must be determined without reference to the effect upon the premises of the improvement in enhancing or depreciating its value, so its market value after the appropriation must be fixed by reference to the completed improvement. The question usually put to the witness is: "What was the market value of the property after the appropriation?" This question does not mean that the witness is to give the value of the property immediately after the appropriation was made, but its value after the improvement has been completed, taking into account all the advantages and disadvantages thereof, with this exception, however, that, where benefits are allowed to be considered, the owner must be given at least the market value of the land taken. Matter of City of New York, 190 N. Y. 350, 360, 83 N. E. 299, 16 L. R. A. (N. S.) 335. So, in ascertaining the market value of the remainder of the premises in this proceeding, the claimants are entitled to have considered the fact that there will be a sloping wall opposite the remainder of the premises which will make the construction of a dock expensive, and generally to have taken into account the effect of the new canal upon the remainder of their property. They are not entitled to the expense of constructing a stone dock as testified to, for the state is under no obligations to build such a dock or to allow for its construction. Whether or not a dock will be permitted at all rests in the judgment of the state. In fixing the value of the remainder of the premises, however, the prospect of using and building a suitable dock should be taken into account. It does not follow that, because the claimants had a rude dock on the old canal, they are entitled to have taken into account as a part of their damages the cost of constructing a new dock. They are entitled to the market value of the property that was taken which means not its cost of reproduction, but its actual market value, and they are entitled to have taken into account in fixing the damages to the remainder all considerations which an ordinarily prudent man would take into consideration in fixing the difference in its value before and after the appropriation.

[7] A more serious question is presented by the contention of the claimants that this market value is to be fixed by reference to the profits realized from the business conducted by them on the property.

They are not wholly wrong in their contention that profits may be considered in some cases, and that they may even serve as a basis for estimating compensation in other cases, but there are more instances where profits are not the proper basis for estimating damages than there are instances where they are, and so it has come to be adopted as a general rule that profits cannot be taken as the basis for estimating values in proceedings and cases like the present one. This rule is stated by Judge McLaughlin in Sauer v. Mayor, 44 App. Div. 305, 308, 60 N. Y. Supp. 648, 650:

"The profits of a business are too uncertain, and depend upon too many contingencies, to safely be accepted as any evidence of the usable value of the property upon which the business is carried on. Profits depend upon the times, the amount of capital invested, the social, religious, and financial position in the community of the one carrying it on, and many other elements which might be suggested. What one man might do at a profit another might do at a loss."

The claimants may have done a profitable business upon the premises in question, but other parties may prove a failure in the same business on the same premises, and even the claimants may not continue to make the same profits in the future that they have made in the past if left undisturbed. No one can foresee changes that may reduce a profitable business to an unprofitable one. As Judge Cullen said in the Matter of Gilroy, 26 App. Div. 314, 316, 49 N. Y. Supp. 798, 799:

"The profits of the business would naturally depend far more largely upon the judgment, forethought, and business skill of the appellants, the use of their capital and the condition of trade, than upon the value or location of the particular property upon which the business was conducted."

The coal business in this instance was carried on by the claimants in connection with the canal, but it is well known that such enterprises have been carried on along the line of railroads and the other enterprises in which claimants were engaged might perhaps be equally profitably pursued at some other location. Lewis on Eminent Domain says:

"Nor can the profits of a business be shown for the purpose of proving the value of the property. The profits of a business do not tend to prove the value of the property upon which it is conducted. The profits of a business depend upon its extent and character and the manner in which it is conducted. One man will get rich, while another will become bankrupt, in conducting the same business upon the same property." 3d Ed. § 727.

In Stevens v. State, 13 N. Y. Ct. Cl. 111, 127, 128, this court said:

"The question frequently arises in cases involving an interference with property as to whether or not the owner or tenant is entitled to prospective profits as the measure of his damages. It is often contended that the allowance of profits alone adequately measures the loss, and that the difference in the diminution in rent does not make the claimant good for the injury which he has sustained. The rule itself as to the allowance of profits is well understood, but its application in a particular case may be a different matter. In many cases profits have been allowed (Bagley v. Smith, 10 N. Y. 489 [61 Am. Dec. 756]; Taylor v. Bradley, 39 N. Y. 129 [100 Am. Dec. 415]; Schile v. Brokhahus, 80 N. Y. 614; Snow v. Pulitzer. 142 N. Y. 263 [36 N. E. 1059]; Egan v. Browne, 128 App. Div. 184 [112 N. Y. Supp. 689]; Lakeside Paper Co. v. State, 45 App. Div. 113 [60 N. Y. Supp. 1081];

Bates v. Holbrook, 89 App. Div. 548 [85 N. Y. Supp. 673]), but the general rule is that subject to certain well-established qualifications anticipated profits are not recoverable, because such profits are too dependent upon numerous and changing contingencies to constitute a definite and trustworthy measure of damages, because they are ordinarily remote and not the direct and immediate result of the acts complained of, and because they are not within the contemplation of the parties affected. Griffin v. Colver, 16 N. Y. 497 [69 Am. Dec. 718]; Wehle v. Haviland, 69 N. Y. 448; Witherbee v. Meyer, 155 N. Y. 446 [50 N. E. 58]; Reisert v. City of New York, 174 N. Y. 196 [66 N. E. 731]; Moraver v. Grell, 78 App. Div. 146 [79 N. Y. Supp. 533]; Connolly v. City of New York, 115 App. Div. 81 [100 N. Y. Supp. 673]; Menrow v. Assembly Catering & Supply Co., 121 App. Div. 481 [106 N. Y. Supp. 109]; Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199 [11 Sup. Ct. 500, 35 L. Ed. 147]; Western Union Telegraph Co. v. Hall, 124 U. S. 444 [8 Sup. Ct. 577, 31 L. Ed. 479]; Eckington, etc., Ry. Co. v. McDevitt, 191 U. S. 103 [24 Sup. Ct. 36, 48 L. Ed. 112]."

While the claimants are not entitled to have the amount of business done by them taken as the measure of the value of their premises, they are, however, entitled to have the facts in relation to their business submitted in evidence as bearing upon the market value of their property. The cases are not harmonious upon the rule as to whether or not gross and net income may be put in evidence as bearing upon the value of property taken in condemnation proceedings, for the reason that the cases range from those where profits clearly have no bearing upon the value of the premises to those where they are the best evidence of their value. Whether or not profits should be considered depends upon the nature of the premises taken. Where the personal skill, experience, and efforts of the owner plays too prominent a part, the profits realized from the business conducted upon real property constitute but little aid in determining the value of the property, but, where the earnings depend chiefly upon the location, soil, or character of the property itself, the profits derived from it may furnish reliable evidence of its value. There are therefore cases which hold that profits are inadmissible in evidence (Matter of Gilroy, 26 App. Div. 314, 49 N. Y. Supp. 798; Sauer v. Mayor, 44 App. Div. 308, 60 N. Y. Supp. 648; City of Syracuse v. Stacey, 45 App. Div. 249, 61 N. Y. Supp. 165), and those where evidence of profits has been held to be admissible (Reisent v. City of New York, 174 N. Y. 196, 66 N. E. 731). In this particular case there is a question as to whether or not the property is so situated as to justify the introduction in evidence of the profits of the business not as the basis of the value of the property but as bearing upon its value. Upon this subject Lewis says:

"The cases, however, are not harmonious on the question of injury to business. * * * The profits derived from the use of the property itself may be shown, whenever such profits would be an indication of the value. * * * So the profits derived from farming afford a criterion of the value of the farm. * * * If the particular use to which the property is devoted has continued for a long time and has imparted to the property a peculiar value for that use, as for a hotel, it is proper to show the fact, and to take it into consideration in fixing the damages." Eminent Domain (3d Ed.) § 727.

15 Cyc. 733, says upon the same subject:

"Strictly speaking, business is not property within the meaning of the statutes relating to eminent domain, and, in the absence of statutory pro-

vision therefor, one whose land is taken cannot ordinarily recover compensation for loss or interruption of business or trade, inability to perform contracts, or inconvenience in carrying on trade or business, whether the loss be a present or a future one, and whether the inconvenience and interruption be temporary or permanent. * * * There are many decisions to the effect, not only that loss of profits, present or future, does not constitute an element of damage, but also that neither the value of the business carried on upon land taken, nor the amount of profits derived from it, is to be considered in determining the market value of the land. * * * There is, however, much authority in support of the doctrine that while profits which are merely speculative cannot be considered as an element of damage, and while profits, although not merely speculative, cannot be considered as elements of damage strictly speaking, yet it is proper to take into consideration, as bearing upon the question of the market value of the property, the advantages for business of the land taken or injured, and its productiveness, and the income and net profits which may reasonably be derived from it; and, further, that in fixing the compensation evidence is competent which tends to show such incidental loss, inconvenience, injury to business, present or prospective, and other like injuries, as may be known, or may reasonably be expected, to result from the construction and operation in a legal manner of the proposed improvement, whether it is constructed on the land condemned, on a highway, or on other lands."

Reisert v. City of New York, 174 N. Y. 196, 207, 209, 66 N. E. 731, 734, 735, was a case where loss of profits was not recoverable, and still evidence of profits was held to be admissible. Judge Bartlett stated the rule to be that:

"The plaintiff should be allowed to prove all the facts in regard to the manner of conducting the business on his farm, before and after the trespass, calculated to give the court or jury a correct general idea of the condition of the farm and its productive value."

But Judge Bartlett said, where evidence of profits is allowed, it does not follow that these profits are the measure of the damages.

[8] The claimants should have been permitted to introduce in evidence all the facts relating to their business, including, if the information is reliable, the profits realized from their business. Omaha Horse Ry. Co. v. Cable Tramway Co. (C. C.) 32 Fed. 727; Laflin v. Chicago W. & N. R. Co. (C. C.) 33 Fed. 415; Matter of State Reservation, 16 Abb. N. C. (N. Y.) 159. It is true that the premises were favorably situated, and it is not denied that no similar location in the village of Spencerport was available. Under these circumstances, it would seem that this property had a special adaptation to the uses to which it had been placed, and that it was peculiarly available for the business conducted thereon by the claimants. It is well known that the income from property is one of the chief facts relied upon by prospective purchasers of real estate. The rents received from real property are supposed to bear certain relation to its value. In the case of some kinds of property, the earnings are the best measure of the value, for frequently such property is so peculiar and rare in the community that it has no market value as that term is generally understood. People ex rel. Powers v. Kalbfleisch, 25 App. Div. 432, 49 N. Y. Supp. 546; Monongahela Nav. Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463; Montgomery Co. v. Bridge Co., 110 Pa. 54, 20 Atl. 407. While this is so with reference to productive real estate, it may or may not be true in the case of real property upon which a business

is conducted. In the latter case the profits may be entirely the result of the personal skill, experience, and labor of the individual conducting the business, and in such a case the profits would not be the measure of the value of the property, and have very little bearing thereon. It is a matter that must be left to the judgment of the court, but it may be safely asserted that no element should be excluded in arriving at the market value of premises which it is customary for the business world to consider in determining such market value of which an ordinarily prudent man would take into account before forming a judgment as to the market value of property which he is about to purchase.

The Constitution guarantees "just compensation," and the rule of market value where the whole of the property is taken and the difference in market value before and after the appropriation where only a part of the property is taken has been laid down as a convenient measure of this compensation, but this rule will not meet the requirements of the Constitution where the owner is compelled to incur expenses in connection with the proceedings for acquiring his property or determining his compensation. Where by statute or by necessity the owner is required to make outlays to protect his interests in proceedings to acquire his property, these reasonably necessary expenses form a part of the just compensation to which he is entitled, and should be added to the market value of his property, where the whole of it is taken or to the difference in the market value of the property where only a part of it is taken. Under any other rule, where necessary expenses are incurred in connection with condemnation proceedings, the owner would be receiving less than the market value or difference in the market value of his property as the case may be, and, indeed, in cases where the value of the property is small, he might find it more profitable to abandon the property rather than to press or contest proceedings for its condemnation.

The general rule applicable to legal actions and proceedings that costs and disbursements are not recoverable unless allowed by statute is not applicable to proceedings taken under the power of eminent domain, where a provision exists in the fundamental law that "damages" or "injuries" or "just compensation" shall be allowed. Where such language is to be found in Constitutions, the Legislature by refraining from making provision for the allowance of costs or by providing for less costs than are reasonably necessary cannot reduce the amount that the property owner should receive below that fixed by the Constitution.

In Monongahela Navigation Co. v. United States, 148 U. S. 312, 326, 13 Sup. Ct. 622, 626 (37 L. Ed. 463), the court said that "just compensation" relating to the taking of private property for public use meant a full and perfect equivalent for the property. "The noun 'compensation,' standing by itself, carries the idea of an equivalent. Thus we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages; the former being the equivalent for the injury done, and the latter im-

posed by way of punishment. So that if the adjective 'just' had been omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective 'just.' There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken." The general view on the subject of the allowance of the costs and disbursements of condemnation proceedings is expressed by Chief Judge Andrews in Matter of City of Brooklyn, 148 N. Y. 107, 109, 42 N. E. 413, where he says:

"A person or corporation, whose property is sought to be taken under condemnation proceedings, is entitled to be heard at every step in the process, and in justice should be compensated, not only for the land or property taken, but should be indemnified against all costs and expenses reasonably incurred either in resisting the appropriation or in the proceedings for ascertaining the compensation to be made."

In Matter of Ulster & Delaware R. R. Co. v. Gross, 31 Hun, 83, 84, the court said:

"We may add here that, as private property cannot be taken without just compensation (Const. art. 1, § 6), we have a great doubt whether the expenses of taking it can ever be charged against the person whose property is taken. * * * Whenever he is made to pay such expenses, he fails to receive just compensation to that extent."

In the case of Matter of N. Y. W. S. & B. R. Co., 94 N. Y. 287, 294, the company appealed from an award and secured judgment for costs on reversal against the owner. The court said that these costs could not be recovered against the owner, for, if he could be compelled to pay any part of the expenses incurred by the company, it would conflict with his constitutional right to just compensation. In that case, which has been frequently referred to upon this subject, Judge Rapallo said:

"In such a case to compel the landowners to pay any part of the expenses incurred by the company for the purpose of ascertaining the compensation, which proceedings were an indispensable condition of its right to take the land, would conflict with the constitutional right of the landowners to just compensation. They are entitled to the full amount of their damages when finally ascertained, and this amount cannot be diminished by allowing to the company its own expenses incurred in ascertaining it or in endeavoring to reduce it."

Judge Woodward said in a well-considered case:

"The Constitution (article 1, § 6) requires that private property shall not be taken for public purposes except upon the payment of 'just compensation,' and a man who is forced into court, where he owed no obligation to the party moving against him, cannot be said to have received just compensation for his property if he is put to an expense appreciably important to establish the value of his property. He does not want to sell. The property is taken from him through the execution of the high powers of the state, and the spirit of the Constitution clearly requires that he shall not be thus compelled to part with what belongs to him without the payment,

not alone of the abstract value of the property, but of all the necessary expenses incurred in fixing that value." Matter of City of New York, 125 App. Div. 219, 222, 109 N. Y. Supp. 652, 654.

In Dexter & Northern R. Co. v. Foster, 142 App. Div. 240, 242, 126 N. Y. Supp. 835, 837, 160 N. Y. St. Rep. 835, 837, Judge Spring said:

"It has been the policy of the law to indemnify the owner who has succeeded in establishing either that the plaintiff is not entitled to maintain the proceeding, or has made too small an offer for all the costs and expenses he has incurred in the controversy."

In Re Simmons, 71 Misc. Rep. 152, 128 N. Y. Supp. 724, Judge Tompkins said:

"I believe as I have before stated, that provisions should be made so that the property owners, whose lands are taken by the city, shall not be required to pay any part of their awards for the services of counsel, and that they should have their full awards free from all charges and costs."

In United States v. Dumplin Island, 1 Barb. 24, 26, Judge Edmonds said, in a proceeding taken by the United States to acquire property in this state for the purposes of a lighthouse:

"When the proceedings are instituted for the state, section 73 of the statute [2 Rev. St. pt. 3, c. 9, tit. 2] provides amply for the payment of damages and all costs and expenses incurred; so that the owner can be insured, not merely the value of the land, but all costs and expenses to which he may be subjected, as well in procuring a proper valuation of his land, as in obtaining the money afterwards. But, when the application is for the United States, no such provision is made; and, unless those costs and expenses are included by the jury in their appraisal of the 'damages' the owner must pay them himself; and the assessment, if it is only of the value of the premises, would necessarily fall short of adequate remuneration to the owner."

In Dolores Land & Canal Co. v. Hartman, 17 Colo. 138, 29 Pac. 378, the statute was silent upon the subject of the allowance of costs and disbursements in the proceeding, but, notwithstanding this omission in the statute, the court held that the property owner was entitled to recover his court costs reasonably incurred in the proceeding. Judge Helm said:

"The undeniable intent of this provision is to secure the landowner whose property is taken against his will a fair compensation therefor. It cannot have been the purpose of the constitutional convention to require payment by the owner of costs reasonably incurred in the proceeding whereby his premises are taken. In some instances such costs will amount to nearly or quite as much as the compensation awarded. But, if the owner must disburse for costs the money received for his land, the compensation cannot be regarded as 'just,' within the meaning of the constitutional guaranty. However it might be as to attorney's fees and other like expenses, we do not hesitate to say that the spirit of the Constitution clearly covers the class of expenses usually taxed as costs. Hence though it be conceded that the statute relating to costs in ordinary civil actions cannot apply, courts should nevertheless award them to respondents in condemnation proceedings."

The same doctrine is laid down in City and County of San Francisco v. Collins, 98 Cal. 259, 33 Pac. 56, in which case the statute provided that costs might be allowed, and, if allowed, might be apportioned be-

tween the parties in the discretion of the court. This division of the costs the court held could not be made without violating the provision of the California Constitution, requiring just compensation to be made to owners whose property had been taken. The court said:

"To require the defendants in this case to pay any portion of their costs necessarily incidental to the trial of the issues on their part, or any part of the costs of the plaintiff, would reduce the just compensation awarded by the jury, by a sum equal to that paid by them for such costs."

The subject of the allowance of costs and disbursements is also discussed in Stolze v. Milwaukee & L. W. R. Co., 113 Wis. 44, 88 N. W. 919, 90 Am. St. Rep. 833, in which case the court held that the just compensation for property taken by the right of eminent domain within the meaning of the Constitution includes such reasonable costs and disbursements as are taxable in favor of the prevailing party in similar proceedings incurred by a property owner in securing both the ascertainment and payment of such compensation. Judge Marshall said:

"It cannot have been the purpose of the framers of the Constitution that a person compelled to surrender his property for public uses shall have any less as compensation therefor than a full equivalent, measured by all reasonable rules. That must include all necessary expenses incurred by him in the enforcement of his rights, which are taxable according to law. He must have in the end a full, just compensation for his property. It must not be diminished by any costs reasonably incurred in condemnation proceedings, or in collecting the award, which are ordinarily taxable by the rules of law in favor of the prevailing party in an action or proceeding to make his judicial remedy effective. That is the true constitutional measure of his rights." Epling v. Dickson, 170 Ill. 329 [48 N. E. 1001]; Chicago & Milwaukee R. R. Co. v. Bull, 20 Ill. 218.

Under the Constitution of the state of Washington prohibiting private property from being taken without just compensation being first made or paid into court, the Supreme Court in that state said:

"Under this provision of the Constitution and under the law as announced in the case just above cited and all the subsequent cases on this subject, the landowner cannot be put to any costs whatever for the ascertainment of the damages. All costs must be paid by the condemning party until a valid judgment is obtained." Grays Harbor Boom Co. v. Lownsdale, 54 Wash. 83. 94, 104 Pac. 267, 268.

In Petersburg School District v. Peterson, 14 N. D. 344, 103 N. W. 756, there was no provision in the statute expressly authorizing costs, but such costs were allowed by reason of the provisions of the Constitution of the state of North Dakota providing that private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner. The court said:

"To hold that the owner must pay his own costs in resisting attempts to take his land against his consent, without first paying adequate and just compensation therefor, would nullify to a certain extent this constitutional guaranty, and result in giving him less than just compensation for his property. The constitutional provision means that he shall receive just compensation for his property, and not that the just compensation assessed by a jury shall be diminished to the extent of his costs. The provision was designed for the benefit of the landowner, and should be construed so as to give him its benefit to the full extent."

In Portneuf-Marsh Valley Irr. Co. v. Portneuf Irr. Co. the court said:

"We think under our eminent domain statutes the owner should receive his just compensation for the land taken, clear of any expense of the proceedings." 19 Idaho, 483, 492, 114 Pac. 19, 21.

Lewis sums up the authorities upon this subject when he says:

"By the Constitution the owner is entitled to just compensation for his property taken for public use. He is entitled to receive this compensation before his property is taken or his possession disturbed. If the parties cannot agree upon the amount, it must be ascertained in the manner provided by law. As the property cannot be taken until the compensation is paid, and as it cannot be paid until it is ascertained, the duty of ascertaining the amount is necessarily cast upon the party seeking to condemn the property, and he should pay all the expenses which attach to the process. Any law which casts this burden upon the owner should in our opinion be held to be unconstitutional and void." 2 Lewis, Eminent Domain (3d Ed.) § 812.

It is because of the fact that just compensation is not given where the property owner is required to bear the necessary expenses in protecting his interests in condemnation proceedings that the statutes authorizing such proceedings in this state usually provide for the allowance of costs and disbursements. Thus by chapter 684 of the Laws of 1905, being an act relating to the department of public works of the city of Syracuse and regulating certain proceedings to acquire lands for public improvements, it is provided that the court shall fix, tax, and allow "the costs and expenses of the proceeding and of the parties thereto." Section 37. By the charter of the city of Rochester, it is provided that "costs may be awarded to or against the city in condemnation proceeding or proceeding to assess damages instituted under this act." Laws 1907, c. 755, § 454. The Greater New York charter provides for an offer to sell on the part of the owner, and, if the award exceeds the offer, that he shall be entitled to "taxable costs and disbursements as in an action and in the discretion of the Supreme Court upon application made at a special term thereof to an additional allowance of a sum of money not exceeding five per centum upon the amount of such offer, but in no event more than two thousand dollars." Laws 1901, c. 466, § 1436c. The proceedings for the condemnation of real property under the Code of Civil Procedure provide for an offer to purchase by the condemning party, and that, if the compensation awarded exceeds the amount of the offer, or if no offer is made, the court shall direct the recovery by the owner of "the costs of the proceeding, to be taxed by the clerk at the same rate as is allowed, of course, to the defendant when he is the prevailing party in an action in the Supreme Court, including the allowances for proceedings before and after notice of trial and the court may also grant an additional allowance of costs not exceeding 5 per centum upon the amount awarded." Section 3372. These authorities and these references are sufficient to justify the statement of Chief Judge Andrews in the case above referred to that in justice the owner should not only be compensated for the property taken, but should be indemnified against all costs and expenses reasonably incurred by him in connection with the proceedings. The justice of applying this rule is particularly striking

in the proceedings for the appropriation of property by the state.. These proceedings are more summary and arbitrary than those allowed to any municipal or public corporation in the state. The state takes possession of the property that it desires for a public improvement, ousts the owner without previous notice, serves upon him or files a notice that it desires to take the property, and sends him forth to acquire payment therefor as well as he can. It furnishes machinery for negotiations consisting of an appraiser and assistants, but this provision for arriving at the compensation without legal proceedings is totally inadequate for such an extensive improvement as the construction of the Barge Canal. It is impossible for these appraisers to· reach all of the persons whose property is taken and enter into deliberate negotiations with them as should be done, and the only recourse in most cases is for the owner to file a claim in the Court of Claims. No provision is made by statute for an offer to purchase on behalf of the state or to sell on the part of the owner. After his property has been summarily taken and he has been turned out of doors,. the burden is cast upon him of instituting proceedings to secure his compensation. He must print his claim if it exceeds a certain amount,. procure blue prints of the appropriation maps, attend the session of the court in his locality, and litigate his claim with the opposition of the state backed by its unlimited resources. In nearly all cases this cannot be done except with the employment of counsel and the procurement of witnesses, all of which is an expense to him, which does not enter into the market value of his property. Of course, he may have his witnesses testify to an amount sufficiently large to cover these incidental expenses, or the court may award a sum large enough to cover them, but these expenses hitherto have not been included in the awards. In difficult cases involving serious legal propositions it is impossible for the owner to present his case fairly without the employment of learned counsel and perhaps expert witnesses. He may appear, of course, and plead his own case, but in practice this is never done because no ordinary layman is sufficiently familiar with court proceedings to do so. In important cases these expenses seriously reduce the amount of the compensation if the rule of market value is strictly adhered to in fixing the damages, and in the smaller cases it may even make it unprofitable to prosecute the claim.

It is therefore just and reasonable, and I believe it is required by the Constitution, to allow to claimants their reasonably necessary costs in prosecuting proceedings against the state for compensation for property taken by it. One of these items of expense has been passed upon by the Appellate Division of the Third Department in an appropriation claim involving the state, and in this case it was held that the expense of procuring the abstract of title must be allowed to claimants in addition to the compensation fixed as the value of their premises or the difference in its value before and after the appropriation. Burchard v. State, 128 App. Div. 750, 751, 113 N. Y. Supp. 233, 234. At the time of this decision by a rule of the Court of Claims the claimant was required to file an abstract of his title as a part of his claim, and this requirement the court said necessarily reduced the

amount of compensation allowed to him. In that case Judge Smith said:

"The state cannot take this land without compensation. Nevertheless, before compensation can be made even voluntarily, the owner is required to pay a certain disbursement. That disbursement is made part of her damages. If that be not allowed to her, she would not receive the full damages which she has suffered. If the interest in the land be small, the disbursement might well eat up the full amount of compensation received. To protect her in her constitutional right, therefore, the amount which she necessarily has paid for this search should be held to be part of the damages which she has sustained and which the state must pay."

If this decision is sound, and I believe it is, the expense of printing the claim and of furnishing blue prints of the appropriation maps must also be allowed, for both of these items are required by rules of the court, and are a prerequisite to the filing of the claim. The allowances, however, should go farther, and should embrace all those reasonably necessary costs and disbursements which are usually allowed in similar court proceedings under the Code of Civil Procedure.

In the present case the statute actually provides that no costs, witnesses' fees, disbursements, or counsel or attorney's fees shall be allowed. Code Civ. Proc. § 274. This provision was inserted when proceedings to appraise damages in appropriation cases formed a small part of the work of the court, and this branch of the litigation against the state did not increase to any extent until the Barge Canal work was fairly under way, since which time nearly the entire attention of the court and almost continuous sessions have been necessary to determine the compensation to which owners whose property had been taken for the improvement were entitled. At the present time claims of this character aggregate nearly one-fifth of the entire bond issue authorized for the work, and the question of the allowances of costs and disbursements has become an important one.

The state cannot take the property of its citizens at less than just compensation, and it is beyond the power of the Legislature to reduce this compensation by withholding the allowance of necessary costs and disbursements in litigation which the state has the power to compel claimants to institute and prosecute.

The amount of the compensation and the rule for ascertaining it is a judicial question with which the Legislature has nothing to do. As was said in Monongahela Nav. Co. v. United States, 148 U. S. 312, 327, 13 Sup. Ct. 622, 626 (37 L. Ed. 463):

"The Legislature may determine what private property is needed for public purposes—that is a question of political and legislative character—but, when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through Congress or the Legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry."

The allowance of such costs and disbursements, however, does not mean that the owner is to be permitted to incur any unreasonable expenses, for the costs and disbursements should be limited to such as

are allowed in similar proceedings under the Code of Civil Procedure. In Matter of Studwell v. Halstead, 62 Misc. Rep. 330, 333, 116 N. Y. Supp. 68, 70, Judge Mills said:

"While, doubtless, the constitutional 'just compensation' requires a fair indemnity to the owner for his necessary expenses incurred in proving the value of his land taken, as was substantially held by our Appellate Division in the recent case of Matter of Board of Rapid Transit R. R. Commisssioners, 128 App. Div. 103, 126 [112 N. Y. Supp. 619], I do not think that such 'just compensation' should be held to require indemnity for any unusual compensation which the owner may have chosen to pay his counsel or expert witnesses. If, in the hope of securing an unusual award, he has deemed it best to incur such an excess beyond ordinary expenditure, I think he should be left himself to defray it."

Claimants contend that the rule of just compensation as interpreted by the courts has been changed in this state by statute, and cite section 83 of the canal law (Consol. Laws 1909, c. 5) as their authority therefor. This section provides that:

"The owner or person interested in any real property so permanently appropriated shall be entitled to be allowed and paid the damages resulting or accruing to him in consequence of such appropriation, after deducting therefrom the benefits received by or resulting to him in consequence of the construction and maintenance of a canal for the use of which the appropriation is made."

It is true as contended that the state has the power to provide by statute for the payment of "damages" or "injuries" not included within the language of the Constitution as interpreted by the courts (O'Connor v. Pittsburgh, 18 Pa. 190; Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; United States v. Alexander, 148 U. S. 186, 13 Sup. Ct. 529, 37 L. Ed. 415; Matter of City of New York, 190 N. Y. 353, 83 N. E. 299, 16 L. R. A. [N. S.] 335; People ex rel. Burhans Co. v. City of New York, 198 N. Y. 439, 92 N. E. 18), but this intention will not be implied, but must be clearly expressed in the language of the statute. There is nothing in the text of the section of the canal law to indicate that the Legislature intended to enlarge the rule of compensation laid down by the courts, and this intention is borne out by the language of the Barge Canal statute vesting jurisdiction in the Court of Claims which provides that the Court of Claims shall have jurisdiction to determine the amount of "compensation" for lands, structures, and waters appropriated. The rule therefore applicable to these claimants in measuring the amount of their compensation is the difference in the market value of their premises before and after the appropriation, and to the amount of compensation thus ascertained should be added their reasonable costs and disbursements as herein defined, but this rule does not include a consideration of the profits of their business as the measure of the market value.

The claimants in this proceeding are therefore entitled to recover "the costs of the proceeding to be taxed by the clerk at the same rate as is allowed, of course, to the defendant when he is the prevailing party in an action in the Supreme Court, including the allow-

ances for proceedings before and after notice of trial and the court may also grant an additional allowance of costs, not exceeding five per centum upon the amount awarded." Code Civ. Proc. § 3372.

The state and the claimant in respect to the allowances of costs and disbursements stand in the same relation as if no statute had been passed prescribing any allowances in these proceedings. The section of the Code of Civil Procedure providing that "costs, witnesses' fees and disbursements shall not be taxed, nor shall counsel or attorney fees be allowed by the court to any party" (section 274) does not apply to these proceedings, for the enforcement of the provision would be in violation of the Constitution, and deprive the owner of the compensation which he is guaranteed by the Constitution. In the absence of a provision relating to costs, section 3240 of the Code of Civil Procedure applies, which provides that:

"Costs in a special proceeding instituted in a court of record, * * * where the costs thereof are not specially regulated in this act, may be awarded to any party, in the discretion of the court, at the rates allowed for similar services, in an action brought in the same court. * * *" Matter of City of Brooklyn, 148 N. Y. 107, 42 N. E. 413.

The amount of these costs is regulated by section 3251 of the Code of Civil Procedure. Matter of Brooklyn, Union El. R. R. Co., 176 N. Y. 213, 68 N. E. 249.

If this decision is a departure from the practice that has prevailed in the past in these proceedings against the state and may appear to enhance the amount which the state will be obliged to pay for the appropriation of lands, the state can protect itself by making more ample provision for negotiation and settlement with property owners by providing for an offer of purchase or an offer of sale and making the costs conditional upon the amount of the award and by an expeditious disposition of appropriation claims.

The items of disbursements for tracing map $5, printing claim $10.50, furnishing blue prints $2.70, providing abstract of title $10 should be allowed, but the items for expert witnesses at $10 and $25 a day and the 10 per cent. allowance upon the amount of the award for attorney's fees should be disallowed. Matter of Grade Crossing Com'rs, 19 Misc. Rep. 230, 235, 43 N. Y. Supp. 1073; City of Johnstown v. Frederick, 35 App. Div. 44, 46, 54 N. Y. Supp. 412; Woodcock v. Wabash Ry. Co., 135 Iowa, 559, 113 N. W. 347, and the costs and disbursements should be taxed as provided by the Code of Civil Procedure.

SWIFT, J. I concur with my Associate, Judge RODENBECK, as to the facts established by the evidence in this case, and as to the measure and rule of damages adopted by him. Section 274 of the Code of Civil Procedure which is a part of the Code applicable solely to the practice and procedure in the Court of Claims expressly provides that no costs or disbursements shall be allowed or taxed in the Court of Claims. There is much merit in the argument that a claim—

ant whose property has been appropriated by the state is not receiving just compensation for his property taken, unless he is also paid the necessary and reasonable expenses incurred in the prosecution of his claim.

[9] This court has held that claimants are not entitled to costs and disbursements under the Code ever since the court was established. The Appellate Division held in Burchard v. State that claimant was entitled to the expense of obtaining an abstract of his title to property appropriated in addition to the market value of the property taken and the decision has since been followed by this court.

[10] I am of the opinion that the sections of the Code of Civil Procedure relating to the taxation of costs and disbursements do not apply to the Court of Claims.

[11] To hold this would be to declare section 274 of the Code unconstitutional, and I think it better to follow the direction of the Code as a part of the practice of this court until its provisions are directly passed upon by the appellate courts.

I therefore dissent from the opinion of Judge RODENBECK in so far as it grants to the claimant his costs and disbursements to be taxed by the clerk upon the ground that there is no provision of law that permits it.

MURRAY, J. I concur in the views of Judge SWIFT.