ISABEL DAVIES and CHARLES DAVIES, Individually and as Executors, etc., of MARIAN DAVIES, Deceased, and WILLIAM DAVIES, Appellants, v. THE STATE OF NEW YORK, Respondent.

Third Department, January 8, 1919.

State — appropriation of lands for canal purposes — judgment of Court of Claims affirmed — court may view premises.

Appeal from a judgment of the Court of Claims making an award on account of the appropriation of lands for barge canal purposes. The sole issue is as to the amount awarded by the court. Evidence examined, and *held*, that the determination of the court should be affirmed.

The judges of the Court of Claims may view premises for the purpose of fixing values.

APPEAL by the claimants, Isabel Davies and another, individually and as executors, and another, from a judgment of the Court of Claims, entered in the office of the clerk of

said court on the 6th day of February, 1918, granting them the sum of $22,428.10.

*Miller & Hubbell* [*James F. Hubbell* of counsel], for the appellants.

*Merton E. Lewis, Attorney-General* [*George L. Meade, Deputy Attorney-General,* of counsel], for the respondent.

LYON, J.:

This is an appeal by the claimants from an award by the Court of Claims on account of the appropriation of lands for barge canal purposes. Between the years 1898 and 1908 the city of Utica, by the erection of a bank and the making of a new channel, changed the course of the Mohawk river. Before the lands constituting the Mohawk flats were subject to almost yearly inundations which materially improved the lands for farming purposes, but rendered them unavailable for development. The lands appropriated by the State consisted of a strip from 75 to 150 feet in width, although for a short distance at the lower end of the width of 250 feet, and a total length of 2,733 feet. This strip lay along the westerly bank of a portion of the abandoned Mohawk bed, in which the State had created a harbor for boats Utica bound. There was also appropriated four and two hundred and seventy-five one-thousandths acres of lands situated in the harbor. The allowance by the Court of Claims for the eleven and forty-three one-hundredths acres appropriated was the sum of $17,430 with interest from the date of appropriation, amounting to the time of the entry of judgment, February 5, 1918, to the sum of $22,708.10. The owners of the land claiming to be aggrieved have taken this appeal.

The value of the strip of land appropriated was placed by claimants' three witnesses at from $4,000 to $4,500 per acre, amounting to approximately $45,000. The values placed upon the lands by the two witnesses called by the State was $400 per acre, or an aggregate valuation of $4,500, or one-tenth the valuation placed upon it by the claimants' witnesses. The value of the four and two hundred and seventy-five one-thousandths acre piece covered by water and lying in the bed of the stub end of the Mohawk river was $3,500 or

$4,000 per acre, as estimated by the claimants' witnesses, and $100 per acre as estimated by the State's witnesses. For this award, however, no judgment was entered and the same is not included in this appeal. The claimants' witness Poole testified that the seventy-five acres on Mohawk flats, of which the claimants. are the owners, were worth at least the sum of $300,000. Yet he says he has not known of a sale of the Davies property being made within the forty years that he has known it, and says it would not surprise him at all to find that the seventy-five acres appear upon the assessment roll as having a value not exceeding $10,000. The three judges of the Court of Claims viewed the property, across which a high power electric transmission line ran, and fixed the value thereof at $17,430.

Prior to the appropriation by the State the Davies property was without any outlet save two over the tracks of three busy railroads. It was away from all freight depots. In fact it was about 700 feet from an outlet, unless Snipe street be regarded as an outlet, which seems impossible as it appears to have been cut off by the Ballou buildings. This made the tract practically unsalable. This purchase by the State throws the whole tract of land open. By the sale of this strip of land the Davies property acquires a valuable outlet, not only to the harbor but to North Genesee street. The old end of the Mohawk is the canal terminal harbor. The witnesses for the claimant justify their figures of the value testified to by them by the sales of small parcels of land in the neighborhood. These were wanted by the parties for the particular purposes for which they were purchased. The Coupe tract of nine and one-half acres had a frontage on North Genesee street as well as on the Mohawk river. The Ballou or Kellogg tract of six acres was available for mill purposes, for which no part of the Davies tract could well have been used. It had been used as the site of a planing mill for fifteen or sixteen years. It had milling transit privileges which were extremely valuable, and it was situated on Meadow street. The Standard Oil five acres were situated at one end of the freight house of the New York Central railroad, and in the immediate vicinity of the harbor created by this terminal. The Pritchard property was sold for $1,000 an acre, and seems to have had no outlet unless

possibly by Hoyt street. It was situated in the immediate vicinity of the Davies property. The sales to the New York Central were also brought about by the particular location of the property sold. All these purchases were of very small acreage and situated on railroad switches which owing to the intervening North Genesee street could not apply to the lands of the Davies property.

The Court of Claims in the opinion handed down by it states that "The wide divergence of opinion in the two sets of witnesses makes those opinions of practically no value to the court unless the theory of one set be accepted as the theory upon which the market value ought to be based." Appellants' attorneys cite *Matter of Simmons* [*Ashokan Reservoir*] (132 App. Div. 574), which cites *Burchard* v. *State of New York*, decided by this court (128 id. 750; appeal dismissed, 195 N. Y. 577), as holding that the Court of Claims has no right to view premises for the purpose of fixing values. They also cite *Matter of City of New York* (*Avenue A*) (66 Misc. Rep. 488); *People ex rel. City of New York* v. *Stillings* (138 App. Div. 168), and *Brainerd* v. *State of New York* (74 Misc. Rep. 100). These cases hold that the Court of Claims has no right to disregard the evidence adduced before it, notwithstanding section 268 of the Code of Civil Procedure makes it their duty to view the premises where the land exceeds in value $500. It would be difficult to cite a case in which the award is for the exact sum agreed upon. In some of the cases cited by appellants' attorneys, the value was fixed at a less sum than that testified to by either party. Not so in the case at bar. Here the value was fixed by the Court of Claims at approximately $1,500 per acre which was nearly four times that sworn to by defendant's witnesses.

As was said in *Perkins* v. *State of New York* (113 N. Y. 660): "The requirement that the commissioners of the Board of Claims should view the premises was inserted in the statute for some purpose. The view which they are required to make is not a mere idle ceremony. It is intended to aid their judgment on the question of damages, and to enable them to appreciate the evidence and give to it its proper weight. They are not bound to be governed entirely by the evidence of witnesses."

We think the Court of Claims was liberal in its dealings

with the claimants, and that the price should not be added to. That court had undoubted jurisdiction of the case. The Court of Claims is entirely within the evidence in arriving at the figures it gives.

The judgment must be affirmed, with costs.

Judgment unanimously affirmed, with costs.