LOUIS F. LICHT and Another, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23336.)

Court of Claims, November 16, 1936.

*Edwin G. Jenkins,* for the claimants.

*John J. Bennett, Jr., Attorney-General [Leon M. Layden, Second Deputy Attorney-General,* of counsel], for the defendant.

RYAN, J.  Claimants' lands abutted on an ancient highway in and by which they had access in both directions.  They also owned a permanent easement over the property adjoining them on the south for the installation and maintenance of water and gas mains and electric and telephone wires to supply their premises with the aforesaid utilities.

Pursuant to chapter 135 of the Laws of 1928 the county of Nassau acquired the property adjoining on the south and conveyed it to the State of New York for parkway purposes.  Thereupon, through the agency of the Long Island State Park Commission, the State of New York constructed a parkway across the lands so acquired.  This destroyed claimants' easement for utilities.

The deed from the county of Nassau to the State described the parcels as bounded by the public road.  It did not convey to the center line thereof.  But in the construction of the parkway the road was deadended and a fill placed upon its surface to support the parkway.  This completely cut off access to claimants' property from the west.  Prior thereto the public road intersected Marcus avenue.  Since then there is no exit from the public road at its westerly end, neither to Marcus avenue nor to the new parkway nor to any highway or street.

Claimants sue for the diminution in value of their property caused by the erection of the parkway. The State says their damages are *damnum absque injuria*. But this was not a mere change of grade of the highway. The facts in the cases of *Miller* v. *State* (229 App. Div. 423) and *Van Aken* v. *State* (261 N. Y. 360) are to be distinguished and the rules stated therein do not apply.

By section 777 of the Conservation Law the Long Island State Park Commission is authorized to acquire real estate. Section 779 thereof defines real estate as follows, viz.: " § 779. The term real estate as used in this part of this article shall be construed to signify and embrace * * * any and all easements and incorporeal hereditaments and every estate, interest and right legal and equitable in lands * * * and also all claims for damages for such property. The term real estate shall also be construed to include all real estate heretofore or hereafter acquired or used for * * * highway * * * or other public purposes, providing the persons * * * owning such real estate, or claiming interest therein shall be allowed the perpetual use, for such purpose, of the same or of such other real estate to be acquired for the purposes of this part of this article as will afford practicable route or location for such * * * highway * * * or other public purpose and commensurate with and adapted to its needs; and provided, also, that such persons or corporations shall not, directly or indirectly, be subject to expense, loss, or damage, by reason of changing such route or location, but that such expense, loss or damage shall be borne in like manner as the expenses incurred in carrying out the provisions of this part of this article."

If this language does not create and reserve to claimants the rights to be compensated, what does it mean? Here are actionable damages for which there must be a remedy. (See *Matter of Grade Crossing Commissioners of City of Buffalo*, 210 App. Div. 328; affd., 240 N. Y. 612, and cases cited, including *Matter of Hoyt*, 162 App. Div. 469; affd., 213 N. Y. 651; also see *Dwornik* v. *State*, 155 Misc. 458.)

True, there has been no formal appropriation of any part of claimants' real estate. Nor was there in the case of *Askey & Hager, Inc.*, v. *State* (240 App. Div. 451; affd., 266 N. Y. 587). There a right created by statute was recognized and held to have been preserved and continued, not defeated, by a subsequent enactment which recited that the State should be liable in the first instance for damages to property not acquired " but this provision shall not be deemed to create any cause of action which would not otherwise exist." No similar restriction appears in the Conservation Law

but if it did the *Askey & Hager* case is authority for holding that it would not defeat claimants' recovery herein.

The argument that the county of Nassau, rather than the State of New York, should pay is without force. The damages were caused when the physical work of erecting the parkway was performed. It was then that claimants' easements were cut off, then that the road was closed and access destroyed. (*People ex rel. Janes* v. *Dickey,* 206 N. Y. 581.)

Claimants are entitled to an award. What sum shall be fixed as their damages? The only evidence on this subject produced upon the original trial was that offered by the claimants. The Attorney-General presented no witnesses but relied entirely upon the defense of *damnum absque injuria* with the added argument that if there was recoverable damage liability therefor was upon the county of Nassau. Subsequently, however, and in the light of the affirmance by the Court of Appeals in the *Askey & Hager* case and of the decision by this court in the *Dwornik* case, the Attorney-General applied to reopen the trial and to be permitted to present evidence on the question of damages. This application was granted and a further hearing held to which we shall refer later.

The claimant Louis F. Licht is a surgeon in active practice and prominent in his profession. Claimants' property is part of a tract of thirty-eight acres situated in the town of North Hempstead, Nassau county. The tract sold at one time for $10,000 an acre, or $380,000. In June, 1930, claimants purchased eleven acres and paid therefor $109,000. They reconstructed the buildings and expended thereon about $90,000. When they purchased the property its assessed valuation was $100,000. At the time of the trial its assessed valuation was $63,000. A prospective purchaser named Whaley was negotiating with claimants for three and one-half acres in the westerly portion of the tract for a price of $35,000. Whaley had engaged an architect who had prepared diagrams for the building of a house. When the parkway was constructed, Whaley dropped negotiations. All of these facts appear in the record of the trial and were testified to without objection or exception by the defense except that objection was noted as to the price which Whaley was to pay.

Claimants, called two expert witnesses on real estate values. Each testified that in his opinion claimants' property was worth $200,000 prior to the building of the parkway and $150,000 thereafter, and that claimants had been damaged in the amount of $50,000 besides the extra cost of bringing in the utilities over a new and longer route, estimated to be about $3,800.

At the hearing recently held, which followed the reopening of the case, the State called one expert witness who gave his opinion that the value of claimants' property before the construction of the parkway was $150,000 and that after construction the value was the same. In explanation this witness stated that in his opinion the parkway has benefited the Licht property and that the loss of access to Marcus avenue, if any, is more than offset by the construction of the parkway and the entrance thereto from the Lakeville road. The Lakeville road, to which the witness referred, intersects the ancient public road at its easterly end. This intersection was not changed and claimants' access in that direction remains as it was prior to the construction.

The witness who rendered this opinion is a man of experience in real estate appraisals and one who has testified frequently in this court. After due consideration, we are unable to adopt his view of the situation. In our opinion the claimants have sustained substantial damages. If we followed only the testimony of the experts called by the claimants we would necessarily find that such damages amounted to $53,000. We believe, however, that we are not bound to this course.

The Court of Claims Act, section 13 (formerly Code Civ. Proc § 268), provides that the court " may view any premises affected by the proceedings, and in case of any appropriation of land by the State the value of which shall exceed five hundred dollars, it shall be the duty of the court, or the judge or judges hearing the claim, to view the premises affected by the appropriation."

In conformity with this provision of the statute three judges of this court viewed the claimants' property.

It has been held that boards of assessors and commissioners in condemnation acting under change of grade statutes are at liberty to view the premises only " in order to enable them to understand and apply the testimony and that they could not supplement the testimony before them by their own view, and that they were required to determine the claims according to the evidence presented on the hearings." (*People ex rel. Olin* v. *Hennessy*, 159 App. Div. 814, citing *People ex rel. City of New York* v. *Stillings*, 138 id. 168; *People ex rel. Hallock* v. *Hennessy*, 152 id. 767; affd., 206 N. Y. 750.)

However, in *Matter of City of New York* (198 N. Y. 84, 92) the Court of Appeals said: " The commissioners view the premises, and in coming to a conclusion as to value they may take into consideration the knowledge thus acquired in connection with the oral evidence produced before them." And the courts have sustained awards for less than the amounts given by any expert when there was some basis therefor within the record and no improper

use was made of the information thus obtained. (*Matter of Simmons*, 132 App. Div. 574; *Matter of City of New York* [*Avenue C*], 151 id. 83. See, also, *Matter of City of New York* [*Titus Street*], 139 id. 238; *Matter of City of New York* [*Crotona Park*], 142 id. 665; *Matter of Chittenango-Cazenovia, Part I, Highway*, 130 Misc. 516.)

We are aware of the decision in *Burchard* v. *State* (128 App. Div. 750 [1908]; appeal dismissed, 195 N. Y. 577), wherein it was held that in the face of the testimony given by the witnesses both for the claimants and the State, this court was not authorized to disregard that testimony and place the value of the property appropriated below that given by any witness produced.

But in *Davies* v. *State* (186 App. Div. 393 [1919]) we find approval of the following statement from the opinion in *Perkins* v. *State* (affd., 113 N. Y. 660 [1889]), viz.: " The requirement that the Commissioners of the Board of Claims should view the premises was inserted in the statute for some purpose. The view which they are required to make is not a mere idle ceremony. It is intended to aid their judgment on the question of damages, and to enable them to appreciate the evidence and give to it its proper weight. They are not bound to be governed entirely by the evidence of witnesses but they may base their award, and must base it, upon the knowledge derived from that view and the evidence of the witnesses. Such has been the uniform practice under similar statutes."

After this review of the authorities we believe we are justified in using the knowledge derived from our view of claimants' property in conjunction with the testimony in the record in reaching our determination herein. From all of these considerations we have come to the conclusion that an award in the sum of $20,000 will adequately compensate claimants for the damages which they have sustained.

Barrett, P. J., concurs; Ackerson, J., dissents, with a memorandum.

Ackerson, J. (dissenting).* I dissent from the decision herein and believe the claim should be dismissed on the grounds that no actual damage has been suffered and that there are no legal grounds for making compensation.

---

* Dissenting memorandum rendered November 19, 1936.