### IN THE

## SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW-YORK,

IN OCTOBER TERM, 1836,* IN THE SIXTY-FIRST YEAR OF THE INDEPENDENCE
OF THE UNITED STATES.

---

### LYON vs. JEROME.

An *engineer* employed by the *canal commissioners*, to whom is given the
superintendence of the construction of a portion of a canal, is authorized
to enter upon the lands of individuals and take *materials* for the further-
ance of the work without any *express orders* or direction from the com-
missioners.

THIS was an action of *trespass*, tried at the Oswego cir-
cuit in June, 1834, before the Hon. HIRAM DENIO, one of
the circuit judges.

The suit was brought for the taking of a quantity of red free-
stone from the quarry of the plaintiff, used in the construction
of *locks* on the *Oswego canal.* The stone was taken by the di-

---

* During the last vacation, Chief Justice SAVAGE resigned his office, and
the Hon. SAMUEL NELSON, senior justice of this court, received the appoint-
ment of *Chief Justice.* During the same vacation, the Hon. ESEK COWEN,
circuit judge of the *fourth circuit,* was appointed one of the justices of this
court; and the Hon. JOHN WILLARD, first judge of the Washington com-
mon pleas, received the appointment of circuit judge of the fourth circuit.

rection of the defendant, who was the *chief engineer* in the construction of the canal. One of the *canal commissioners* frequently saw the work while in progress; he gave no orders to procure stone from any lands other than such as were appropriated for the line of the canal, but testified that had the engineer represented to him that it was indispensable that stone should be procured from the plaintiff's quarry, he would have sanctioned the measure. He further testified, that the *chief engineer* " had in a measure the supervision of the work and material " for its construction. The plaintiff produced in evidence a *certificate* of the defendant as to the quantity of stone taken, in which the defendant stated that the stone had been taken by his directions, under the supposition on his part that the quarry was on lands belonging to the state ; and it was proved that a tract of land belonging to the state did adjoin the quarry of the plaintiff. The plaintiff offered to prove that the *canal appraisers* had refused to make him any allowance for the stone taken ; which evidence was objected to and rejected. A motion was made for a *nonsuit,* on the ground that the stone was necessary for the construction of the works on the canal, and that the defendant, as *engineer,* had acted in good faith in directing it to be taken. The motion for a nonsuit was denied, and the jury, under the charge of the judge, found a verdict for the plaintiff for $174,52. The defendant moves for a new trial, which is resisted on the ground that the power to enter upon the lands of individuals, and take materials for the construction of the canals, is confided solely to the *canal commissioners ;* and being a *personal trust,* cannot be delegated to others. The *engineers* are selected and employed by the *commissioners ;* they may enter and take materials for *repairs,* but not for the *original construction* of the canals.

*J. A. Spencer,* for the defendant.

*S. Stevens & B. Davis Noxon,* for the plaintiff.

*By the Court,* NELSON, C. J. By an act passed 22d April, 1823, *Session Laws of* 1823, *p.* 254, the canal commissioners were authorized to " cause a survey to be made by one of the

engineers in their employ, of the Oswego river from the head of the falls to Lake Ontario." In the fall session of 1824, *Session Laws of* 1824, *p.* 342, another act was passed directing the company to proceed in the improvement of the navigation of the Oswego river, according to a certain report made to the legislature, or in such other manner as they should judge best for the interest of the state and the accomplishment of the work ; and for the construction and completion of the same it was declared, that " the same powers are hereby conferred on and extended to the canal commissioners, as they at present possess under the several laws of this state relating to the Erie and Champlain canals. The power of the commissioners, as it existed at this time in respect to the subject matter in question, is contained in the 3d section of the act of 1817, *Session Laws of* 1817, *p.* 302, which provides that it shall be " lawful for the canal commissioners, and each of them by themselves, and by any and every superintendent, agent and engineer employed by them, to enter upon, take possession of and use, all and singular any lands, waters and streams, necessary for the prosecution of the improvements intended by this act; and to make all such canals, feeders, dykes, locks, dams, and other works and devices as they may think proper for making said improvements, doing nevertheless no unnecessary damage."

It does not appear that the defendant, in this case, was *expressly* authorized by the acting *canal commissioner* to enter upon and take the *stone* from the plaintiff's quarry ; he was, however, the *chief engineer* upon the canal, and had the supervision of the work, and direction as to the materials to be used in its construction. The authority given by the statute for the purposes specified is *to the canal commissioners;* the defendant, therefore, must protect himself, if at all, under the authority of one of these officers. It by no means, however, necessarily follows, from this view of the law, that every act done by the subordinate agents is to be *specially* authorized. Regarding the nature and extent of the improvement, and the variety of labor and material connected therewith in its successful prosecution, such a construction of the statute would be unreasonable, as it would have greatly embarrassed the

operations, and therefore cannot be considered to have been within the contemplation of the legislature. The engineer is an officer employed for his knowledge and skill in the busi-- ness, and considerable confidence must necessarily be reposed in him, in directing and superintending these works. It was impossible for one of the commissioners to be always present, personally to supervise and direct throughout the line of the canal. He could give general instructions to the principal agents, but must necessarily leave much to their judgment in the matter. The engineer was the most fit and proper person to be charged with this partial discretionary power. The commissioner stated that the defendant had power to di- rect such alterations in the execution of contracts on the canal as he deemed important, in his absence, and in a measure had the supervision of the work, and direction concerning the ma- terials. In the case of *Wheelock* v. *Young & Platt*, 4 *Wendell*, 647, this court decided that the agents were not liable in tres- pass for entering upon the lands of an individual, to take ma- terials for the construction of the canals authorized by the act of 1817. In that case Young, one of the defendants, was an engineer, in the employment of the commissioners, and had the superintendance, as such, of a portion of the northern ca- nal. The other defendants acted under him, and entered up- on the premises of the plaintiff and carried away large quan- tities of cobble stones, to build a slope wall in the canal, which passed through his farm. It does not appear that any *specific directions* had been given in that case by one of the canal com- missioners. It is stated there that the stone could not have been procured as conveniently any where else ; but this fact is not noticed by the chief justice in delivering his opinion. No such qualification to the powers given to the commission- ers and their agents is found in the act, and although it is highly proper it should enter into their consideration in deter- mining upon the appropriation of the private property of indi- viduals, an error in judgment in respect to it ought not to sub- ject them to be treated as trespassers. It may be added that it appears in this case also that the stone from the quarry of the plaintiff was the most convenient for building the locks. I conclude, then, that though the authority to enter upon the

plaintiff's land and use his quarry must be derived from the canal commissioners, no express and specific direction need be given. The employment of the engineer, and the duties devolved upon him in his particular suderintendance and direction in the construction of the canal, supervised and controlled at all times, as he may be by the commissioner himself, should be deemed a satisfactory compliance with the intention of the act. In this case the *commissioner* stated that he frequently saw the work while in progress, and of course knew where the materials were taken, and approved of all, though he did not know the plaintiff owned the quarry from which the stone was taken. No objection was made by the plaintiff himself, and until the canal appraisers refused to award him a compensation for the material, he does not seem to have viewed the act of the defendant in the light of a trespass.

It was said, on the argument, that if the engineer should be deemed to have possessed authority under the commissioner to authorize an entry upon the plaintiff's quarry and carry away materials for the locks, still it did not appear that he had exercised his judgment in the matter, because he supposed at the time the quarry belonged to the state. I do not perceive how this can essentially vary the case: So far as the convenience or necessity of taking the stone from any particular place entered into the mind of the engineer or commissioner, in giving the direction, and one or both undoubtedly ought to have been taken into consideration, the *title* to, or ownership of, the premises, could not materially affect their judgment in the matter. The case presented for the exercise of their judgment turned not upon the *title*, but upon the locality and fitness of the material, together with the facility with which it could be quarried. Whether taken from the lands of the state, or of an individual, could not be a material consideration. We are bound to presume that the engineer examined with sufficient diligence the several quarters in the vicinity of the locks, and satisfied himself that the one selected was, under all the circumstances, the most proper from which to procure the materials; and also that the commissioner concurred with him, as he was frequently present while

the work was in progress, and made no objections. Indeed, he says this quarry was the most accessible. Chancellor Kent, in *Jerome* v. *Ross*, 7 *Johns. Ch. R.* 340, when commenting upon this power under the act of 1817, says, "It is sufficient that the land used and the materials taken from it are needful, and conducive to the object, and more convenient in the application, and less valuable, and the use of them less injurious to the owner than any that might readily be selected. There must, from the reason of the thing, and the nature of the case, be great latitude of discretion in the selection of the land and the materials." Ch. J. Savage, in *Wheelock* v. *Young & Platt*, before referred to, understood the decision in *Rodgers* v. *Bradshaw*, 20 *Johns. R.* 735, to be, that the agents of the state might enter upon and appropriate lands adjacent to the line of the canal, which were necessary to be taken, and that the commissioners were to determine, in their discretion, as to the necessity of such appropriation ; and if they acted in good faith, and with sound common sense, it was impossible they should be held trespassers. The same principle was recognized in *Jerome* v. *Ross*. Few officers would be found to possess sufficient fortitude and patriotism to undertake the discharge of these onerous public duties, if the exercise of their discretion in every instance where private property must necessarily be taken was liable to be reviewed by courts and juries, and they incurred the peril of becoming trespassers, if the courts and juries should differ from them in a particular case. Upon established principles, an officer clothed with a discretionary power is responsible only for a sound and honest exercise of it. It is the only just and practicable rule under which such a power can be executed.

The plaintiff is undoubtedly entitled to compensation ; and it is difficult to conceive why the appraisers should have rejected his application. A reasonable construction of the act of 1817, §3, *Sess. Laws of* 1817, *p.* 302, and of 1827, §1, *Sess. Laws of* 1827, 398, I am of opinion, would have justified the appraisers in entertaining his claim, and doing justice in the case. *See* 4 *Wendell*, 650, 1. The good faith of the state is pledged to him ; and if there is any defect in the prescribed

mode in such cases, an appeal to the sovereign power, the legislature of the state, we are bound to presume cannot fail to afford him redress.

New trial granted.