THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.*
CLARENCE L. FISHER AND FLORENCE FISHER JACK-
SON, Defendants.

(Supreme Court, Herkimer Equity Term, November, 1916.)

Adirondack Park — action under sections 1638 and 1639 of the Code of
Civil Procedure to determine title — presumption in favor of action
of purchasing board in appropriating land under Forest, Fish and
Game Law.

A contract between the owner of a tract of land, containing
about 23,000 acres situated within Adirondack Park, and a
paper company, for the sale of certain lumber on said tract,
including balsam, provided that the land should be cut clear
as the work progressed and at least 20,000 cords should be cut
each year until such timber was entirely cut and removed,
and down to January 19, 1909, the paper company was actually
engaged in cutting and removing timber under its contract,
and, subject to said contract, the owner of the tract on Decem-
ber 11, 1908, executed an option contract for the sale thereof
with all the timber thereon which contemplated the cutting and
removal of all the hard wood timber, the building of a railroad
through the tract and the construction of a dam and power
house and such option was to be executed by the vendee on
or before April 1, 1909. The provisions of said contract
having come to the attention of the forest purchasing board it
passed a resolution on January 19, 1909, appropriating the
tract and making it a part of the Forest Preserve and Adiron-
dack Park. The consent of the governor was obtained to such
purchase and the necessary steps were taken and proceedings
had as provided by the Forest, Fish and Game Law to vest
title to said tract in the state. The former owner having made
claim that no valid appropriation of the tract had been made
by the forest purchasing board, the state through its attorney-
general brought the present action to determine the title to
said tract pursuant to sections 1638 and 1639 of the Code of
Civil Procedure.

Supreme Court, November, 1916.          [Vol. 98.

*Held,* that it would be presumed from the action taken by the forest purchasing board that they determined the existence of the facts which authorized their action and, as no formal resolution to that effect was required, such action furnished sufficient evidence for their determination and that judgment should be ordered against defendants pursuant to sections 1645 and 1646 of the Code of Civil Procedure.

ACTION to determine the title to real estate.

E. E. Woodbury, attorney-general (L. S. Jenks, deputy attorney-general, B. F. Sturgis, Assistant deputy attorney-general, of counsel), for plaintiff.

Purcell, Cullen & Purcell (Edward N. Smith, of counsel), for defendants.

James F. Tracey, *Amicus Curiæ,* representing the Association for the protection of the Adirondacks.

Russell S. Johnson, *Amicus Curiæ,* representing LeRoy Crawford.

EMERSON, J.   At the time this controversy arose one Mary L. Fisher was the owner of a tract of land containing about 23,000 acres in townships 2, 3 and 4 of Herkimer county, and situated within the boundaries of the Adirondack Park.   This tract was on the watershed from which the Black, Beaver and Independence rivers largely derive the source of their supply, and was wild land covered with hard and soft wood the latter consisting mainly of pine, spruce, hemlock and balsam.

On April 3, 1906, said Mary L. Fisher entered into a contract with the St. Regis Paper Company whereby she sold said paper company all of the sound, green and growing spruce, hemlock and balsam timber stand-

ing on the tract aforesaid which was eight inches or more in diameter eighteen inches from the ground. Said contract provided that the land should be cut clear as the work progressed and at least 20,000 cords should be cut each year until the timber so sold was entirely cut and removed. From the time of said contract down to January 19, 1909, said St. Regis Paper Company, through its sub-contractors, was actually engaged in cutting and removing said timber from the tract aforesaid.

On December 11, 1908, said Mary L. Fisher executed an option contract to one Gaffney for the sale of said tract, with all the timber thereon, subject to the St. Regis contract. This contract contemplated the cutting and removal of all the hardwood timber on the tract aforesaid, the building of a railroad through the same and the construction of a dam and power house thereon and the option was to be exercised by the vendee on or before April 1, 1909.

The provisions of these contracts having come to the attention of the forest purchasing board of the state, said board passed a resolution on January 19, 1909, appropriating the tract aforesaid and making it a part of the Forest Preserve and Adirondack Park. The consent of the governor was obtained to such purchase and the necessary steps were taken and proceedings had as provided by the Forest, Fish and Game Law to vest the title to the same in the state. Thereafter, the claim having been made by Mrs. Fisher, the owner, that there had been no valid appropriation of the land by the forest purchasing board, this action was brought by the state through its attorney-general to determine the title to said tract, pursuant to the provisions of sections 1638 and 1639 of the Code of Civil Procedure. Pending this action Mary L. Fisher died and the

present defendants, who are her heirs-at-law, were sub-stituted as defendants in her place and stead.

While no serious objection is raised to the method of procedure adopted by the forest purchasing board in making such appropriation, it is strenuously urged on the part of the defendants that, under the circum-stances, said board had no jurisdiction to make the same. This leads us to first consider the provisions of the statute upon that subject as they then existed and the action which the forest purchasing board took in that regard. Section 35 of the Forest, Fish and Game Law, existent on January 19, 1909, declared that the Adirondack Park should include all lands then owned or thereafter acquired by the state within certain boundaries, which boundaries included the tract in question, and that said park should forever be reserved and maintained for the free use of all the people.

Section 44 provided for the creation of a forest pur-chasing board to consist of the forest, fish and game commissioner and two commissioners of the land office to be designated by the governor, which board was vested with all the power to acquire lands which were formerly possessed by the forest preserve board, pro-vided, however, that such lands should not be pur-chased or acquired so far as the Adirondack Park was concerned without the consent of the governor. Sec-tion 45 declared it to be the duty of said board and it was thereby authorized to acquire for the state by purchase or otherwise lands, structures or waters or such portions thereof in the territory embraced in the Adirondack Park as the board might deem advisable for the interests of the state.

Section 46 authorized said board to take possession of any land, structures and waters in the territory embraced in the Adirondack Park, the appropriation

of which in its judgment should be necessary for the purposes specified in section 35 above quoted.

Section 47 directed that, upon the request of the board, the state engineer and surveyor should certify a description of the lands sought to be appropriated and that the board or a majority thereof should endorse on such description a certificate stating that the lands therein described had been appropriated for the purpose of making them a part of the Adirondack Park, which description and certificate were to be filed with the secretary of state. Said board was thereupon to serve on the owner a notice of filing the same, a duplicate of which, with proof of service, might be recorded in the books used for recording deeds in the office of the clerk of any county in which said lands should be located, which record was made due proof of such service. Said notice was made conclusive proof of such entry and appropriation by the state and thereupon such property was to be deemed to be and was the property of the state.

Sections 48 and 49 provided a method of payment for the land so appropriated while section 50 authorized the owner of land so appropriated to reserve the spruce timber thereon ten inches or more in diameter at the height of three feet from the ground, provided the same was taken within six months after such appropriation.

Section 64 provided a method for substituted service of the notice of appropriation where the owner was out of the state, while section 66 declared that the power to so appropriate real property should not be exercised unless the real property sought to be appropriated adjoined real property already owned or appropriated by the state at the time the description and the certificate were filed or unless, in the judgment of the board, timber thereon other than spruce, pine or hemlock was

being cut or removed to the detriment of the forest or the interests of the state.

Prior to January 19, 1909, said forest purchasing board had discussed the propriety and the necessity of appropriating the tract in question and had placed the matter before the governor, who had given his oral consent to such appropriation, and on that day the board passed a resolution declaring that in the judgment of the board it was necessary for the purposes of said Adirondack Park to appropriate the tract in question and directing the state engineer and surveyor to make and certify to the board an accurate description of the same. It was further resolved that the board should endorse upon the description thus to be furnished that the land therein described be and the same thereby was appropriated for the purpose of making the same a part of the Forest Preserve and Adirondack Park, that said certificate and endorsement of the board be filed in the office of the secretary of state and notice thereof served on the owner and a copy of such notice with proof of service be recorded in the clerk's office of the county of Herkimer. The state engineer and surveyor thereupon and under date of January 20, 1909, made a description of said tract which he certified to the board to be correct, and the board thereupon endorsed on said description a certificate that the land therein described had been appropriated by the state for the purpose of making it ·a part of the Adirondack Park, which endorsement was signed by all the members of the board and said certificate and endorsement were thereupon and on January 23, 1909, filed in the office of the secretary of state. As the owner was without the state of New York the board procured an order from a justice of the Supreme Court for substituted service as provided in section 64 of the Forest, Fish and Game Law, a copy of said

description.and certificate with a notice that the same was filed in the office of the secretary of state on January 23, 1909, and that the description so given was a correct description of the lands so appropriated, which service became completed on February 3, 1909.

Later and on March 29, 1909, the governor, pursuant to a request therefor, filed with said forest purchasing board a written consent and approval of said acquisition and appropriation and a ratification and confirmation of his oral consent and approval thereof which he had previously given. From this statement of the proceedings had and taken by the forest purchasing board it would seem that the method of procedure adopted was in strict compliance with the terms of the statute upon the subject, and, the board possessing the power to make the appropriation in question, title to said land became vested in the state.

It is, however, urged in the first place by counsel for defendants that the statute in question is unconstitutional in that it provides for the taking of private property for public uses without due process of law, and, in that connection, it is said that due process of law requires that compensation should be made before the appropriation, while the statute in question authorizes said appropriation in advance of such compensation. There will be found in the books some judicial utterances to that effect. *Overing* v. *Foote,* 65 N. Y. 269, per Reynolds C.; Cooley Const. Lim. (Ed. 1868) 353, 528.

It was, however, held by our old Court of Errors as early as 1832 that where the legislature authorized the taking of private property for the use of the state it was sufficient to make provision for compensation and that it was not necessary to ascertain the amount of such compensation or pay the same in advance of such taking. This rule seems to have been strictly adhered

Supreme Court, November, 1916.     [Vol. 98.

to since. *Rogers* v. *Bradshaw*, 20 Johns. 735; *Chapman* v. *Gates*, 54 N. Y. 133, 143; *Hamersley* v. *Mayor*, 56 N. Y. 533, 536. And in *People* v. *Adirondack R. Co.*, 160 N. Y. 225, the Court of Appeals sustained the constitutionality of a former statute of which the present one is merely a reenactment.

It is next said by defendants' counsel that no written consent by the governor to the acquisition of this tract was obtained until after the appropriation, whereas the statute says that such appropriation shall not be made without the consent of the governor. The statute does not require a consent in writing nor does it seem to make such consent a part of the appropriation proceedings as there is no requirement that it should be filed in the office of the secretary of state or recorded as part of the record title of the state. The requirement is apparently a precaution against hasty and improvident action on the part of the board and is merely a limitation on the same and not an essential part of the condemnation proceedings. So viewed it would seem that the oral consent given by the governor in advance of the appropriation sufficiently complied with the statute. At all events the written confirmation of such consent afterwards filed by the governor would seem to meet every requirement of the case.

It is also most strenuously urged that the board had no power to appropriate the land in question because it did not adjoin other land already owned or appropriated by the state and no timber other than spruce, pine or hemlock was being cut or removed to the detriment of the forest or the interests of the state. It is conceded that this tract did not adjoin any lands then owned or appropriated by the state unless the De Camp tract came within that category. This De Camp tract adjoined state lands and also adjoined the Fisher

tract in question. There had been no proceedings taken for its appropriation but negotiations had been pending for its purchase since the month of December, 1907. Propositions and counter propositions for such sale seem to have been made without any meeting of minds upon the subject. Sometime in January, 1909, De Camp sent a deed of the tract to the forest purchasing board. Whether this deed was executed at the time is a controverted question. Inman, the counsel for the board, says it was executed while De Camp says it was not executed at the time, but was merely submitted as a form of conveyance for the approval of the board. But whether executed or not seems to me quite unimportant as all agree that it contained reservations which were not acceptable to the board and for that reason it was not accepted and was returned to De Camp. It was not until March 10, 1909, that the proposition to purchase, as made by the board, was finally accepted by De Camp and a deed was executed, delivered to and accepted by the board. The state, therefore, had no legal title to the De Camp tract prior to March 10, 1909, nor had it any equitable title that a court of equity would recognize and enforce, as there was no contract in writing for its purchase, no part of the purchase price had been paid and no possession of the lands had been taken by the state. It is quite clear, therefore, that the Fisher tract at the time of the action taken by the forest purchasing board did not adjoin land already owned or appropriated by the state and unless in the judgment of the board timber other than spruce, pine or hemlock was being cut or removed therefrom to the detriment of the forest or the interests of the state, and because of that fact the appropriation was made, the board had no power to act and no title passed to the state.

With reference to such power it is urged by the

learned attorney-general that the statute should be so construed as to meet the mischiefs it was designed to prevent.  That the purpose of the legislature in providing for such appropriation was to prevent a denudation of the Adirondack forests to its great detriment and that, as the Gaffney contract threatened such denudation, the board was authorized from that contract alone to determine that timber was being cut thereon contrary to the provisions of section 66 of the Forest, Fish and Game Law.  In other words it is urged that the statute should be construed to meet the case of threatened as well as actual cutting and removal of the timber thereon and in support of this proposition he cites the familiar maxim of Lord Bacon that a thing within the intention of the makers of a statute is as much within the statute as if it were within the letter and a thing within the letter of the statute is not within the statute unless within the intention of the makers.  The maxim thus laid down by Lord Bacon is without doubt a general canon of construction in the interpretation of statutes.  The cases cited in which this rule of interpretation has been . applied, however, were where individual rights were concerned between man and man or where grave public interests were involved and the rule was invoked for the public benefit.  I greatly doubt its applicability to a case where it is sought by proceedings *in invitum* to take the property of an individual for the public use.

It is elementary law that where the property of an individual is to be divested by proceedings against his will there must not only be a strict compliance with all the provisions of the statute made for his protection and benefit, but the plain letter of the law must permit the action which it is proposed to take.  In other words, in such cases the statutes must be strictly construed in favor of the owner of the property which

it is sought to take. *Sharpe* v. *Spier,* 4 Hill, 76; *Sharpe* v. *Johnson,* 4 id. 92.

It is said in *Matter of Water Commissioners of Amsterdam,* 96 N. Y. 358, that a statute which authorizes the taking of private property against the owner's consent is to be strictly construed and such a power can only be conferred by the use of unequivocal words. It seems to me, therefore, that in such cases the court can not speculate as to what the intention of the legislature must have been, but must take the statute as it is and can only uphold the condemnation of private property to public uses where it is authorized by the strict language of the statute.

But it by no means follows that the forest purchasing board were not entitled to consider the Gaffney contract in the determination that they made. They were to consider the existent facts and, in the light of surrounding circumstances and threatened devastation, determine whether such acts brought the case within the exception contained in the statute.

Nor was such right of appropriation affected by the delay in instituting the same. The question is one of power only and if the board possessed the power to appropriate at the inception of the St. Regis contract that power was none the less three years later when a part at least of the timber had been cut and removed, and that the board refrained from exercising such power until the Gaffney contract threatened a complete denudation of the tract is not, in my judgment, a sufficient reason for holding these proceedings invalid.

Coming now to the conditions which existed when the commissioners took the action in question, the evidence shows that from 10 to 25 per cent. of the timber on the tract was balsam. The St. Regis contract authorized the cutting and removal of this balsam down to eight inches in diameter and for nearly three

Supreme Court, November, 1916.        [Vol. 98.

years before the appropriation in question this balsam was being cut and removed by the St. Regis Company through its sub-contractors. These facts, together with the St. Regis and Gaffney contracts, were before the board when the appropriation was made. It is no answer to the action of the board to say that the cutting of balsam is no more injurious to the forest than the cutting of spruce. The legislature has seen fit to exclude balsam from the timber that could be cut without giving a right to appropriate the land and it is not for us to enquire the reason for such legislative action. It would serve no useful purpose to speculate upon the reasons which led to this exception as we must take the statute as it is and under the same determine the right of the board to condemn the property. The cutting and removal of the balsam, when taken in consideration with the other circumstances in the case, was, as Commissioner Whipple and Speaker Wadsworth of the purchasing board both testify, the potential reason which led to the appropriation.

The former attorney-general, in his brief which is now before me, asserts that the interest of the state as mentioned in said section 66 is not a sentimental interest but merely an interest in the physical character of the property owned by the state where such cutting would subject state lands to fire, drought, or dangers of injury. I do not agree with this construction of the statute, as it seems to me that it attaches too narrow a meaning to the words thus used.

It was declared by the legislature, in the act creating the Adirondack Park, that such park should be forever reserved, maintained and cared for as a ground open for the free use of all the people for their health and pleasure and as forest lands necessary to the preservation of the head waters of the chief rivers of the state and a future timber supply. Laws of 1895, chap. 395, § 290.

And in section 35 of the Forest, Fish and Game Law it is said' that the Adirondack Park shall forever be reserved and maintained for the free use of all the people.

In view of these legislative declarations it seems to me that the words " interests of the state " are used in the sense of interests of the people and that anything that detracts from the uses of that park for health or pleasure or which tends to limit or affect the supply of water flowing therefrom into the chief rivers of the state is detrimental to the interests of the people and, therefore, detrimental to the state. Under all these circumstances I can not say there was not evidence before the board which tended to sustain the action that it took.

This discretionary exercise of power was delegated by the legislature to the board and not to the court and I apprehend the true inquiry is whether the evidence of existing conditions fairly tended to support the conclusion at which the board arrived. If so it possessed jurisdiction to act and the sufficiency of such evidence can not be inquired into in this collateral proceeding. *Miller* v. *Brinkerhoff,* 4 Den. 118; *Staples* v. *Fairchild,* 3 N. Y. 41, 46; *Sheldon* v. *Wright,* 5 id. 497; *Skinnion* v. *Kelley,* 18 id. 355; *Potter* v. *Ogden,* 136 id. 384, 396; *Lamp Chimney Co.* v. *Brass & Copper Co.,* 91 U. S. 660.

It is well settled that the legislature may delegate the power of eminent domain and that in the exercise of that power the tribunal, having acquired jurisdiction, acts judicially and its determination is not subject to collateral attack. *Matter of Union El. R. Co.,* 112 N. Y. 61; *People ex rel. Burnham* v. *Jones,* id 598; *Allen* v. *Utica, Ithaca & Elmira R. R. Co.,* 15 Hun, 81; *Matter of Peck,* 80 Hun, 123. *Farrington* v. *Mayor,* 83 id. 124.

Finally it is said that the proceedings of the board

are faulty because there was no resolution passed to the effect that in the judgment of the board timber other than spruce, pine or hemlock was being cut or removed to the detriment of the forest or the interests of the state. The members of the board say that the board in fact so determined and this, it seems to me, meets all the requirements of the case even though no formal resolution to that effect was ever passed. In *Baker* v. *Johnson,* 2 Hill, 342, the legislature had directed the canal commissioners to construct the Black River canal and empowered them to enter on and take possession of any land which, in their judgment, was necessary for that purpose. It was held that no formal resolution to take the land was necessary and that entering on and taking possession of the land was a sufficient determination of such necessity. See, also, *Lyon* v. *Jerome,* 15 Wend. 569; *Jerome* v. *Ross,* 7 Johns. Ch. 340.

Besides the members of the board were public officers charged with the performance of public duties and the presumption is that no public official will do aught which is against his official duty or omit to do aught which his official duty requires to be done. *Mandeville* v. *Reynolds,* 68 N. Y. 528, 534; *Matter of Marcellus,* 165 id. 77; *Ramsey* v. *Hayes,* 187 id. 370; *Matter of Peek,* 80 Hun, 122; *Smith* v. *City of Buffalo,* 90 id. 119.

The presumption is that when they act it is within the line of their duties and that where they are required to determine certain things before acting the action which they take is presumptive evidence that they have made such a determination. *Jackson* v. *Cole,* 4 Cow. 587.

In Best on Evidence (Vol. 2, § 354), it is said that where official acts are legally and regularly done, courts are disposed to uphold the same by dispensing with proof of circumstances which, strictly speaking, are

essential to their validity. In *Demings* v. *Supreme Lodge,* 131 N. Y. 522, the Court of Appeals say that acts done by a corporation which require the existence of other acts to make them legally operative are presumptive evidence of the latter, and in *Bank of the United States* v. *Dandridge,* 12 Wheat. 64, it is said by Story, J., at pages 69 and 70, that the same presumption exists in the case of public officers.

I conclude, therefore, that, even without proof to that effect, it must be presumed from the action taken by the forest purchasing board that they determined the existence of the facts which authorized such action and, also, as no formal resolution to that effect is required, their action furnished sufficient evidence of such determination. It follows that judgment should be ordered against the defendants pursuant to the provisions of sections 1645 and 1646 of the Code of Civil Procedure

Judgment accordingly.