FRED S. SOWMA, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 29999.)

RAYMOND A. MARTINEZ et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 30000.)

LAURA CHAPMAN, as Administratrix with the Will Annexed of MARY T. GAUTHIER, Deceased, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 30004.)

MYRTLE M. FALCONE, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 30740.)

JOSEPH MICALE et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 30741.)

ANTONIO FALCONE et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 30742.)

ALICE M. HEXIMER, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 30834.)

Court of Claims, April 23, 1953.

*De Silver Drew* for Fred S. Sowma and others, claimants.

*Michael M. Cohn* and *Bernard J. Sax* for Alice M. Heximer, claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Frank M. Noonan* of counsel), for defendant.

RYAN, J. The claimants Sowma, Martinez, Chapman, as administratrix of the estate of Gauthier, Myrtle Falcone, Micale and Antonio Falcone and his wife, Mary, have moved for an order directing that they are entitled to costs and disbursements in these claims as in an action in the Supreme Court, and that costs be taxed by the court. They have also asked that there be included in the costs to be taxed an additional allowance to the respective claimants as provided for in section 1513 of the Civil Practice Act for the preparation and trial of a difficult and extraordinary case. The claimant Heximer also has moved the court for an order granting an extra allowance under the authority of section 1513 of the Civil Practice Act. The difference between the motions made by the six claimants in the first recited group and by the claimant Heximer, is that the six claimants in the first group have attached to their motion papers photostatic copies of offers made separately and to each of them to enter into an agreement adjusting their claim for the appropriation made by the Niagara Frontier State Park Commission, whereas the claimant Heximer has not attached to her motion papers any evidence of any offer made. However, upon the argument of this motion it has developed by statement of counsel for Heximer that his motion for extra allowance is regarded by him as in fact a motion for costs, but that his procedure, as contemplated, would be to present to the clerk of the court his proposed bill of costs and at that time establish his right to costs by showing the offer made to his client by the Niagara Frontier State Park Commission. All of these claims were decided upon findings of fact and conclusions of law and in each instance the court found as a fact that an offer

 

had been made by the Niagara Frontier State Park Commission for the value of each claimant's land appropriated and for damages caused by such appropriation, and that such offer was not accepted. However, in each instance the amounts of the offer were excluded by the court and in each instance the court found as a conclusion of law that the provisions of subdivision 18 of section 59 of the Conservation Law are available to the parties hereto in an appropriate proceeding to tax costs and disbursements. Offhand, it might seem that the court, having made that conclusion of law, these motions, made today, would be unnecessary. However, there had to be some procedure for getting before the court the fact as to whether or not the offer made was less than or greater than the award made by the court before it could be determined whether either party hereto was entitled to proceed to tax costs and disbursements. It seems to be agreed, upon the argument here, that the motions present a question of statutory construction, and I believe counsel are in agreement, as I gather from the argument, that the rule of statutory construction requires that the later enactment governs. That being so, and these motions having been pending for some time, the court has had an opportunity, prior to this return date, to conduct a little research on the history of these statutes.

There appears to be a conflict between the provisions of subdivision 18 of section 59 of the Conservation Law and the provisions of section 27 of the Court of Claims Act. The court, upon research, finds that chapter 220 of the Laws of 1897 entitled " An act to provide for the acquisition of land in the territory embraced in the Adirondack Park and making appropriation therefor " contained in section 18 thereof language almost identical with the present subdivision 18 of section 59 of the Conservation Law, the only difference being that the earlier enactment contained the words " forest preserve board " instead of " department ". Chapter 220 of the Laws of 1897 was supplemented and amended by chapter 94 of the Laws of 1901. The amendment provided that the Forest, Fish and Game Commission was the authority in place of the Forest Preserve Board. I shall not at this time follow down this statute by reciting all of the session laws and chapters, but I can append a list thereof to my formal opinion.█ By tracing it from chapter 220 of the Laws of 1897, to which I have referred, down through the years, to the general revision by chapter 242 of the Laws of 1928, I find that the language has been the same.

Now, to turn to the history of section 27 of the Court of Claims Act. To begin with, chapter 321 of the Laws of 1870, provided for the Canal Board, and chapter 444 of the Laws of 1876, provided for the Board of Audit. Research discloses that these two early acts were entirely silent on the subject of costs. However, chapter 205 of the Laws of 1883, which abolished both the Canal Board and the Board of Audit and established the Board of Claims, provided in part as follows (§ 15): "Costs, witness fees and disbursements shall not be taxed, nor shall counsel or attorney fees be allowed by said board to any party."

In chapter 336 of the Laws of 1884, which is entitled, "An Act in relation to the appraisal of canal claims against the state", section 3 made this provision: "The said board of claims, whenever the appraised value of the premises appropriated shall be less than two hundred dollars, shall in their award make a reasonable allowance for the expense of procuring the abstract of title and certificate of search as to incumbrances, which the statutes require shall be furnished the comptroller before payment of any damages which may be awarded for the permanent appropriation of land or water."

By chapter 36 of the Laws of 1897, chapter 205 of the Laws of 1883, and all acts amendatory thereof were repealed and the new statute established the Court of Claims, rather than the Board of Claims, and added title 3 to the Code of Civil Procedure. Section 15 of chapter 205 of the Laws of 1883, which I have above read, was re-enacted and became section 274 of the Code of Civil Procedure, and that statute through various enactments, including the abolishment of the Court of Claims in 1911 and the re-establishment of the Board of Claims and the abolishment of the Board of Claims in 1915 and the re-establishment of the Court of Claims — that section, in the language quoted — remained as section 274 of the Code of Civil Procedure, until 1920, when the Code of Civil Procedure was revised into the various practice acts including the Court of Claims Act, and section 274 of the Code of Civil Procedure became section 33 of the Court of Claims Act. By chapter 860 of the Laws of 1939 (eff. July 1, 1939) there was a general revision of the Court of Claims Act and section 33 was re-enacted and is the present section 27.

As appears from this history, the present section 27 of the Court of Claims Act has been re-enacted in the same language since 1883, whereas subdivision 18 of section 59 of the Conservation Law has remained in the same language since 1897. The last amendment to subdivision 18 of section 59 of the Conserva-

tion Law was in 1928, when the word " department " replaced the word " commission ". So far the Conservation Law provision seems to be the later statute. However, there is another factor to be considered. We find that in the opinions of the Attorney-General (1939 Atty. Gen. 121), upon inquiry of the chairman of the State Council of Parks on behalf of the Niagara Frontier State Park Commission, he reported in part as follows: " The Niagara Frontier State Park Commission is without authority to appropriate the lands of the International Railway Company, or any other land. Authority to appropriate lands has been conferred upon most of the other State Park Commissions, but in enacting Part 3 of Article XVI of the Conservation Law, the Legislature did not confer that authority upon the Commissioners of the Niagara Frontier State Park Commission. That authority may, of course, be conferred upon the Commissioners by appropriate amendment of the Conservation Law."

Thereafter, and in the next session of the Legislature, subdivision 2 of section 682 of the Conservation Law was added by chapter 354 of the Laws of 1940, which provided the authority in the Niagara Frontier State Park Commission to appropriate land. There was, however, a limitation in time and the authority expired January 1, 1942. But by chapter 419 of the Laws of 1945, the authority was renewed. That is, the authority to appropriate was renewed by the re-enactment of subdivision 2 of section 682 in the same language with the omission of the words, " prior to January first, nineteen hundred forty-two ".

Now, the court in making its decision and awards in each of these appropriation cases has recited at the outset in the preamble of its decision in the above-numbered and entitled claims, " the appropriation of lands situate in the City of Niagara Falls, County of Niagara, by the State of New York for park purposes pursuant to Conservation Law, Secs. 59 and 682 ", and the authority for that recitation, in each instance, was the notice of appropriation served on each respective property owner and claimant, which in words recited that the appropriation was made pursuant to those statutory sections. Now I find further, in view of the reference in his argument by the learned Attorney-General to the language of the enabling acts in several of these cases, and not in all of them, that each of the enabling acts which I have in front of me recites, in section 1, wherein jurisdiction is conferred upon the Court of Claims to hear the claim, and referring to the parcel appropriated, that the notice " having been duly served upon " claimant, naming him or her, " pursuant to the provisions of the conservation law ". It

appears, therefore, that by the statute under which these appropriations were made it was specifically directed that such appropriations were to be made under the provisions of section 59 of the Conservation Law. Likewise, our jurisdiction herein is based thereon. This court must assume that when, in 1940, and again in 1945, the Legislature conferred upon the Niagara Frontier State Park Commission this authority, the said Legislature was aware of the existence of section 27 of the Court of Claims Act. This court therefore concludes that the intent of the Legislature was definitely that the provisions of the Conservation Law would be applicable. Now, again, in supplement to this thought — and I won't take the time to go into detail — but my review of the Conservation Law with respect to the other park commissions, indicates, I think in each instance, but at least in respect to the Genesee State Park Commission, the Finger Lakes State Park Commission, the Central New York State Park Commission, the Taconic State Park Commission and others, that the power to appropriate is given pursuant to the provisions of section 59 of the Conservation Law. In some instances the park commissions may proceed under the Condemnation Law. But the fact that these other various commissions are governed by the same statute confirms, to my mind, the Legislature's intent.

Apparently we are all agreed, upon the argument of these motions, as to the general rules of statutory construction. The rule of the later statute, to which I referred earlier, was expressed by Judge DESMOND, now of the Court of Appeals, at Special Term in the case of *Matter of Marine Trust Co. of Buffalo* v. *Kenngott* (175 Misc. 362, affd. 262 App. Div. 366). We all are familiar too with the rule that repeals by implication are not favored by the courts; that if by any fair construction, whether strict or liberal, a reasonable field of operation can be found for two apparently conflicting acts that construction should be adopted. As Judge LEHMAN said in *Hastings* v. *Byllesby & Co.* (293 N. Y. 413, 419): " The courts will not give retrospective operation to a statute which interferes with antecedent rights in the absence of an unequivocal expression in the statute that the Legislature intended that the statute should have such effect." Hence it would be our duty here to read the two statutes together and give effect to this provision for costs in cases of this nature even if it appeared that the Court of Claims direction was the later expression of the legislative purpose, which, as we have demonstrated, it is not. For we have the further consideration that power to condemn property must be exercised in strict conformity with the statute con-

ferring the right, and for that I have a number of citations. (*Matter of Central Hudson Gas & Elec. Corp.* v. *Morgenthau*, 234 App. Div. 530, 533, affd. 259 N. Y. 569; *Matter of Water Comrs. of Amsterdam*, 96 N. Y. 351; *Schneider* v. *City of Rochester*, 160 N. Y. 165, 172.) Nichols on Eminent Domain ([2d ed.], vol. I, § 19) states in part: "The power of eminent domain lies dormant until legislative action is had, pointing out the occasions, modes, agencies and conditions for its exercise."

I take this citation from a Miscellaneous report: "It is elementary law that where the property of an individual is to be divested by proceedings against his will there must not only be a strict compliance with all the provisions of the statute made for his protection and benefit, but the plain letter of the law must permit the action which it is proposed to take. In other words, in such cases the statutes must be strictly construed in favor of the owner of the property which it is sought to take." That is from *People* v. *Fisher* (98 Misc. 131, 140).

In the present situation the power of the Niagara Frontier State Park Commission to appropriate property existed solely by virtue of subdivision 2 of section 682 of the Conservation Law, as amended by chapter 419 of the Laws of 1945, and by virtue of section 59 of the Conservation Law. As the authorities establish that these claimants have the right to insist that the statutory provisions shall be followed, I believe the provision for taxing costs is available to them in this instance. The exercise of eminent domain under section 59 of the Conservation Law is an administrative rather than a judicial act. However, the statute contemplates judicial determination of just compensation to the property owner in the event the parties cannot agree, and the statute gives the Court of Claims jurisdiction to determine such compensation. The allowance of costs must be regarded as an integral part of the procedure to be followed in reaching that determination. Further examination of the Conservation Law provisions indicates that it was designed to foster amicable agreement on compensation for the property taken. It is as part of that design that the statute imposes the penalty of paying costs upon the party whose unreasonable position necessitates a trial and judicial determination of the compensation to be made. It must be noted that the thing works both ways, that costs are allowed to the State in the event that the offer exceeds the award. And this to me discloses a further reason why the provisions of subdivision 18 of section 59 as adopted by chapter 419 of the Laws of 1945, were intended to supersede section 27 of the Court of Claims Act. That brings

us to a discussion of the cases cited by the Attorney-General in the memorandum which he has presented here today. In *Brewer-Titchener Corp.* v. *State of New York* (99 N. Y. S. 2d 324), Presiding Judge BARRETT disallowed the expense incurred for printing copies of the claim. He did allow the cost of printing maps. The claim was filed pursuant to chapter 862 of the Laws of 1936. I find no provisions in that statute for the taxation and recovery of costs. *Butterfield* v. *State of New York* (178 App. Div. 292, revd. 221 N. Y. 701) was an action in tort based on the negligent operation by the State of the Champlain Canal. *Banner Milling Co.* v. *State of New York* (117 Misc. 33, mod. 210 App. Div. 812, affd. 240 N. Y. 533) and *Brainerd* v. *State of New York* (74 Misc. 100) were claims based on appropriations of lands for canal purposes. There was no provision in the Canal Law for the taxation of costs. The *Brainerd* case is significant for the comment of the eminent Judge RODENBECK, now in retirement after a distinguished career as head of the Board of Statutory Consolidation, as Presiding Judge of this court and as a Supreme Court Justice in the Seventh Judicial District. No better argument for the justification of the allowance of taxable costs to a landowner, deprived of his property by the State and required to bear the expense of litigation to recover compensation therefor, has been presented nor could be conceived than appears in his opinion, written in 1911. That he was overruled, reluctantly, by his two associates does not detract one iota from the force of his presentation.

The Attorney-General does not mention *Burchard* v. *State of New York* (128 App. Div. 750), but I call attention to it because it is referred to in the prevailing opinion in the *Brainerd* case. and also in the report of another case which I shall discuss in a moment. The *Burchard* claim was also for an appropriation under the Canal Law. Therein the Third Department, noting that the claimant was required to file a clerk's search showing his title, allowed him the disbursement thereby incurred as an expense made necessary to perfect his claim.

Now let us consider the fifth case cited by the Attorney-General on this point, viz., *Taggarts Paper Co.* v. *State of New York* (187 App. Div. 843, affd. 230 N. Y. 622). (The affirmance is not reported in the Gilbert Bliss Annotations to the Court of Claims Act recompiled 1947, nor in the supplement 1952. Nor is the case cited in the annotations to Court of Claims Act, § 27 in Clevenger's Practice Manual, 1952.) Here is a case which arose from an appropriation under chapter 130 of the Laws of 1908, one of the successive enactments revising chapter 220 of the Laws of 1897, to which I referred at the outset of this dis-

cussion. The act was then known as the Forest Fish and Game Law and the language of section 61 thereof was identical with that of subdivision 18 of the current section 59. At first reading this case appears as a conclusive holding against the decision which I have indicated I am about to make. But an examination of the record discloses that the one essential requirement necessary to put into operation the provision for the taxation of costs is entirely lacking in the *Taggarts* case. That essential is an offer made by the State Department for the value of the land appropriated. No offer was made to Taggarts Paper Co. Indeed upon the appeal counsel for the property owner asked this question, viz.: "Can the State by failing to make any offer relieve itself from paying claimant's necessary costs and disbursements, which it would be obliged to pay in case it had made an offer smaller than the amount eventually recovered?" and continued "It will not be presumed that the legislature intended to deprive a landowner of the right to recover his costs and disbursements (Matter of City of New York 125 App. Div. 222). Where the statute expressly awards costs in case the recovery exceeds the offer, the inference is strong that it was not intended to deny costs where no offer was made, and the claimant was forced to go into the Court of Claims and assert its right". In the *Taggarts* case the Attorney-General apparently conceded that had an offer been made costs would have been taxable to one party or the other for he said in his answering brief, after citing certain authorities, viz.: "These cases and many others like them hold that whether costs and disbursements shall be allowed to a property owner in any form of condemnation proceeding is *wholly discretionary with the Legislature,* and that the courts are bound by legislative action on that subject. Section 61 of Chapter 130 of the Laws of 1908, under the provisions of which appellant's property was taken, makes provision for costs and disbursements in favor of the claimant in case he recovers more on the trial than the State has offered; and for costs and disbursements against the claimant if the recovery does not exceed the offer, or if there is no recovery, and this provision has been continued and now appears in the Conservation Law. There is no claim that the Forest Purchasing Board made any offer for the property so as to entitle either the claimant or the State to recover costs." I am satisfied that the denial of costs in the *Taggarts* case rested on the fact that no offer was made. Here, offers were made and I am convinced that these claimants are entitled to have the benefit of the relief which the Legislature has provided where the facts justify granting it.

Now, as to the procedure, gentlemen, for the taxing of costs.

While subdivision 18 of section 59 of the statute recites, as counsel has read this morning, the words "which shall be allowed and taxed by the court of claims and included in its judgment", in my opinion the word "court" does not mean that the judge presiding should pass upon the items of costs, but in the first instance that is the function of the clerk of the court, at least to the point where some dispute arises as to some particular item. I hope that in this case some amicable agreement can be reached between the parties on the items to be taxed. If counsel are agreed that I should, or can convince me that I have the duty, to pass upon the items, I shall of course undertake that task.

Now, that brings us to the motion in the *Heximer* case. I believe counsel in that case should be allowed the opportunity to present the facts with respect to any offers made and to supplement his motion papers. All right, that will be my opinion on the question of costs.

With respect to the request for an extra allowance the rule is that only a party entitled to statutory costs is entitled to it. (*Baranowsky Co.* v. *Guaranty Trust Co. of N. Y.*, 247 App. Div. 169; *Barnes* v. *Midland R. R. Term. Co.*, 161 App. Div. 621.) The allowance is treated as part of the costs of the action. (*United Press* v. *New York Press Co.*, 164 N. Y. 406.) The awarding thereof lies in the discretion of the court. (*Barnard* v. *Hall*, 143 N. Y. 339.) But it must be shown that the case is both difficult and extraordinary within the usual and accepted meanings of those terms. (*Campbell* v. *Emslie*, 188 N. Y. 509.) In the fourth department the practice is to restrain rather than to extend the granting of extra allowances. (*Smith* v. *New York Central & H. R. R. R. Co.*, 235 App. Div. 262.)

Counsel for Heximer calls my attention to the recent Special Term decision of Mr. Justice EAGER in *City of Yonkers* v. *Zedler* (118 N. Y. S. 2d 70, 72) wherein it is said, "As a general proposition, the ' just compensation ' provided for by the constitution would seem to require fair indemnity to the landowner for his reasonable and necessary expenses in proving the value of his land in the proceeding for condemnation thereof."

I heartily subscribe to this doctrine and note the writer's citation of Judge RODENBECK's opinion in the *Brainerd* case which we have already discussed. However, I am constrained to observe that, for lack of statutory authority, the Special Term in Westchester was unable, in the *Zedler* case, to grant an additional allowance as it had done a few weeks earlier in the case of *Municipal Housing Authority for City of Yonkers* v. *Adels* (116 N. Y. S. 2d 707). Similarly, the extra allowance was

approved in principle, but denied for lack of power in *Matter of City of Brooklyn* (148 N. Y. 107), yet awarded in *Matter of City of New York* (125 App. Div. 219, affd. 192 N. Y. 569), not because the case was difficult and extraordinary but because there was statutory authority for the allowance.

But the difficulty here is not that this court does not have the power to make the allowance, for I have demonstrated that it has the authority to direct the taxation of costs herein and that an extra allowance, when awarded, is treated as part of the costs. The problem is, rather, is this a case so difficult and extraordinary as to justify this court in exercising its discretion. Three requirements are necessary. The case must be difficult, it must be extraordinary and a defense must be interposed. In a case where liability was stipulated, where no difficult question of law was examined or considered and where the trial proceeded only for the purpose of determining the amount of damages that plaintiff had suffered, it was held that the trial court did not have the power to grant any additional allowance whatever. (*Standard Trust Co.* v. *New York Central & H. R. R. R. Co.,* 178 N. Y. 407.) And where in a proceeding by dissenting stockholders of a corporation no answer was interposed and no defense set up and the only question was one of valuation on hearings before appraisers the award of any additional allowance was held to be improper as a matter of law. (*Matter of Baker,* 284 N. Y. 1.)

Inasmuch as by rule 13 of the Rules of the Court of Claims the State is not required to answer a claim and all allegations in the claim are treated as denied I hesitate to say that no defense was interposed in these actions. The claimants were required to prove every essential allegation of their pleading including ownership of their property, the service of the notice of appropriation on them, the filing of the map in the County Clerk's office, the timely filing of their claim with the clerk and the timely service thereof on the Attorney-General. I think it may be fairly argued that a defense has been interposed. Yet the only controverted issues tried before me were the several issues of values. The exceptional situs of these properties in their proximity to the Niagara Gorge, the American Falls and the Rainbow Bridge to Canada was urged at the trial, and is referred to now, as making the trial of the claims difficult and extraordinary. But this court, through the years, has heard extolled the merits of properties endowed with majestic views of the Hudson and of the Genesee, of others caressed with the breezes of Great South Bay, of farm lands bestowed with rich pasturage

or cultured with prolific orchards, of city plots enhanced to the $n$th power by the teeming multitude passing to and fro, to say nothing of the fourscore or better homesites which, before the Niagara Frontier Park Commission pre-empted them, enjoyed the fishing and bathing rights to the west shore of Grand Island. The trials of these seven cases, and one other not concerned in these motions, occupied, altogether, eight court days. Most of the detailed testimony, the qualifications of witnesses, the maps, the proofs of sales, were recorded in the case of *Sowma* and stipulated into the other cases. Counsel were well prepared and no doubt expended great time and effort, preliminary to their appearance in court, encountering difficulties in their preparation, particularly in the investigation of sales of other properties found to be, or not to be, of comparable quality, and in analyzing such sales. But while all this is important we find nothing sufficiently unusual which, in the exercise of a sound discretion, calls for an additional allowance herein.

### APPENDIX A.

### Derivation of Conservation Law, § 59, subd. 18.

Laws 1897, ch. 220, § 18.
Laws 1901, ch. 94, § 3.
Laws 1908, ch. 130, § 61.
Laws 1909, ch. 24, § 61 (L. 1909 [Cons.], ch. 19, § 61).
Laws 1911, ch. 647 (see § 51).
Laws 1912, ch. 444, § 85.
Laws 1916, ch. 451, § 59, subd. 18.
Laws 1928, ch. 242, § 59, subd. 18.

### APPENDIX B.

### Derivation of Court of Claims Act, § 27.

Laws 1870, ch. 321, Canal Board.
Laws 1876, ch. 444, Board of Audit.
Laws 1883, ch. 205, Board of Claims (see § 15).
Laws 1884, ch. 336, Board of Claims (see § 3).
Laws 1897, ch. 36, Court of Claims (see Code Civ. Pro., § 274).
Laws 1909, ch. 65, Court of Claims (see amendt. to Code Civ. Pro., § 274).
Laws 1911, ch. 856, Board of Claims (Code Civ. Pro., § 274 remains).
Laws 1915, ch. 1, Court of Claims (Code Civ. Pro., § 274 remains).
Laws 1920, ch. 922, Court of Claims (Code Civ. Pro., § 274 becomes Court of Claims Act, §§ 33, 34).
Laws 1939, ch. 860, Court of Claims (Court of Claims Act, § 33 becomes § 27; Court of Claims Act, § 34 becomes § 28).